New Orleans Canal and Banking Co. v. J. R. Beard et als.—Mrs. E. Klein, Intervenor.

Where an intervenor has a legal interest in defeating the plaintiff's claim, he may properly intervene and even plead prescription or any other defence, if the defendant is insolvent. C. C. 3429 ; 3 L. 201.

A change of residence openly and publicly made from one part or State of our common country to that of another, cannot be considered an act on the part of a debtor which suspends prescription, and creates a proper case for the application of the maxim, *contra non valentem agere non currit prescriptio;* and the fact of his pecuniary embarrassments at the time of such removal, does not *per se* vary the case.

APPEAL from the Fourth District Court of New Orleans, *Price,* J. *Hyams, Labatt & Jonas,* for plaintiff. *G. P. McPheeters,* for intervenor and appellant. *Sam'l Flower,* for *curator ad hoc.*

Land, J. This suit was commenced by attachment on the 10th of March, 1860, against the defendant, on two promissory notes which became due and exigible in the year 1849. The defendant being a non-resident, a *curator ad hoc* was appointed by the court to represent him in the defence of the suit; and he pleaded to the action a general denial, and the prescription of five years.

Afterwards the Louisiana State Bank and one Esther Klein filed separate interventions in the suit, and joined the *curator ad hoc* in his defence to the action, on the grounds that they were the judgment creditors of the defendant, and had an interest in defeating the plaintiff's demand, for the reason that the defendant was insolvent, and had no other property except that seized by the Sheriff under the writ of attachment sued out by the plaintiff; and in their separate interventions prayed that the plaintiff's claim be rejected, and that their judgments be satisfied by preference out of the proceeds of the property seized by the Sheriff under the plaintiff's writ of attachment.

To the interventions thus filed the plaintiff excepted, on the ground that the intervenors had no such direct interest in the property seized, either as owners, or creditors by mortgage or privilege, or otherwise, as authorized an interference on their part in the suit, by way of intervention.

The plaintiff's exception was sustained, and the interventions were dismissed. The plea of prescription was held to be no bar to the action on the evidence adduced; and judgment was rendered against the defendant on the promissory note, with recognition of privilege on the property attached.

The first question for our decision is, whether the exception to the interventions was properly sustained. The Code of Practice declares an intervention to be a demand by which a third person requires to be permitted to become a party in a suit between other persons; either by joining the plaintiff in claiming the same thing, or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff; and it further declares that in order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit. See articles 389, 390.

Whether the exception was properly sustained depends upon the question whether the intervenors had a direct and legal interest in the success of the defendant in defeating the plaintiff's suit by attachment.

44

CANAL BANK
v.
BEARD.

The exception admitted the truth of the allegations contained in the petitions of intervention; and thereby admitted, first, that the intervenors were judgment creditors of the defendant; secondly, that the defendant was insolvent; and thirdly, that all the defendant's property was in the hands of the Sheriff under seizure; and was insufficient to pay the claims of the plaintiff and of the intervenors. And besides, the record shows that the intervenors were not only judgment creditors, but had made a seizure of the property attached, under writs of *fieri facias* issued on their judgments.

Under these circumstances, there can be no doubt that the intervenors had a direct legal interest in the success of the defendant in defeating the plaintiff's suit by attachment; for by defeating the suit, they released the property attached from the operation of a superior privilege claimed by the plaintiff, and subjected the property, which was insufficient to pay all the claims upon it, to the satisfaction of their own judgments. And having such interest, the intervenors had the right to join in all the defences pleaded by the defendant's curator *ad hoc*, and as the defendant was insolvent, including even the plea of prescription. See *Durnford* v. *Clark's Estate*, 3 L. 201; C. C. 3429.

The authorities cited in support of the ruling of the Judge *a quo* on the exception, do not appear to us, after a careful examination, to be directly in point. The cases of *Brown & Sons* v. *Saul et al.* 4 N. S. 434, and of *Emerson* v. *Fox*, 3 L. 183, relied on principally by counsel, are not inconsistent or in conflict with the views taken by us of this case; for in those suits the interventions were dismissed because the intervenors had no direct pecuniary interest in unison with that of the defendants in defeating the claim of the plaintiffs. But in the case before us, the intervenors and defendant have a common and concurrent interest in defeating the plaintiff's suit by attachment; for by defeating the suit, the liabilities of the defendant, on the one hand, are diminished and made less onerous; and on the other hand, the property attached, which is insufficient to pay the claims upon it, is released from the operation of a privilege adverse to the interests of the intervenors.

The second question in the case for our determination, is, whether the Judge *a quo* erred in overruling, on the evidence, the plea of prescription.

The evidence shows that the plaintiff and defendant were domiciled in New Orleans at the time the notes were made, and at the date of their maturity. That the defendant had been a notary public in this city; and that at the time of his departure for California in 1850, he was involved in pecuniary embarrassments, and had failed to pay over money deposited with him in his official capacity. That it was generally believed that he left this city for the purpose of avoiding the pursuit of his creditors.

On the other hand, the evidence shows that the defendant left this city openly and publicly on a steamer engaged in carrying passengers to Chagres on their way to California; and that he lived in California openly and publicly, and was engaged in business of a public nature, such as hotel keeping, and in auction sales; was at one time Secretary of the Senate of California, and afterwards Clerk of the Supreme Court of the State by election of the people. And further, that it was generally known in this city that the defendant had gone to California, from the time of his departure in 1850.

CANAL BANK<br>v.<br>BEARD.

If the maxim "*contra non valentem agere non currit prescriptio*" applies to this case, it is because the defendant himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action by the institution of a suit for the recovery of his debt. But can it be affirmed upon the facts above stated, that the removal of the defendant from this city to California, then within the United States, was an act which effectually prevented the plaintiff from availing himself of his cause of action? In our opinion it was not; for the defendant's residence in California was open and public, and could have been easily ascertained by the use of ordinary diligence on the part of the plaintiff; and the defendant, from the time of his removal, was subject to suit in the courts of that State, wherein he had established a new domicil.

A change of residence, openly and publicly made from one part or State of our common country to that of another, cannot be considered an act on the part of a debtor which suspends prescription, and creates a proper case for the application of the maxim, *contra non valentem agere non currit prescriptio;* and the fact of his pecuniary embarrassments at the time of such removal, does not *per se* vary the case.

In the case of *Reynolds* v. *Batson,* 11 An. 730, the three different classes of cases in which a suspension of prescription takes place, were stated and considered by the Court, but the present case does not come within any one of the classes mentioned, upon the evidence adduced by the parties.

The judgment of the lower court on the exception to the intervention of the Louisiana State Bank cannot be disturbed, for the reason the Bank has not appealed; and as Mrs. Klein, who has appealed, merely joined the defendant in the defence of the action, a judgment in his favor disposes of her intervention, and she is left to pursue her remedy against the property of the defendant, seized under the execution issued on her judgment.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court dismissing the intervention filed in this case by Mrs. Klein be reversed; and it is further ordered, adjudged and decreed, that the judgment of the lower court in favor of the plaintiff on the merits of the case, be avoided and reversed; and it is now ordered, adjudged and decreed, that there be judgment in favor of the defendant, with costs in both courts.

VOORHIES, J., absent.