No. 2442.
Second Circuit

FRANK M. FRIEL v. HENRY D. MUR-CHISON, Administrator, Et Al.

(February 8, 1926. Opinion and Decree.)
(March 11, 1926. Rehearing Refused.)
(May 4, 1926, Writs of Certiorari and Review Denied on Application of Both Appellant and Appellees.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Bills and Notes—Par. 217, 218.**

The execution of a note or a check raises the presumptions of a just and valid consideration, and when the debtor pleads want of such consideration the burden is upon him to establish that plea.

2. **Louisiana Digest—Bills and Notes—Par. 218.**

When the existence of the consideration is expressly put at issue and doubt or suspicion is cast upon its reality, the burden of proving the consideration is shifted to the payee.

3. **Louisiana Digest—Appeal—Par. 521.**

Where the plaintiff in a case erroneously thinks that the burden of proof was on the defendant failed to introduce evidence necessary to a proper decision, the case will be dismissed as a case of non-suit by the appellate court.

Appeal from the Fourteenth Judicial District Court of Louisiana, parish of Avoyelles, Hon. L. P. Gremillion, Judge.

This is a suit for the collection of a check. The defense is the illegality of the consideration of the check. There was judgment for the plaintiff for the amount prayed for and the defendants appealed. Judgment reversed and one of non-suit entered.

Hakenyos, Scott and Provosty of Alexandria, attorneys for plaintiff, appellee.

Hawthorn and Stafford of Alexandria, attorneys for defendants, appellants.

ODOM, J. Plaintiff brings this suit against the defendants for $1,429.00. He alleges as a cause of action that he is the holder and owner in due course and for value and before maturity of a check for said amount dated April 17, 1924, made and signed by John M. Murchison, payable to plaintiff, and drawn on the Planters Bank at Cheneyville, Louisiana, which check was not paid on presentation.

It is alleged that John M. Murchison, who signed the check, is dead, and that the defendants are his heirs and legal representatives.

Defendants admit, in answer, that said check was signed and delivered to plaintiff by John M. Murchison; but their defense is that the check was given for a gambling debt, and is therefore without cause or consideration, and that defendants are not, for that reason, bound.

There was judgment in the District Court in favor of the plaintiff for the full amount sued for, and the defendants have appealed.

OPINION.

J. M. Murchison, the drawer of the check, died within five days after he had signed and delivered it to plaintiff. When it was presented for payment at the bank on which it was drawn payment was refused because the maker was dead. The defendants are the heirs and legal representatives of the maker, and it is admitted that if the check was given for a legal and valid consideration they are bound. But they defend the suit on the sole ground that the check was given for a gambling debt.

It is conceded, of course, that if the check was given for a gambling debt the plaintiff cannot recover.

In support of his case, the plaintiff offered in evidence the check sued on and testified that it was signed and delivered to him by John M. Murchison, and that

it was not paid when presented at the bank. He did not state what the nature of the transaction between him and the deceased, Murchison, which led up to the signing of the check, was.

Defendants, in answer, set out that plaintiff is a gambler, that he conducts gambling games in the city of Alexandria, Louisiana, and that the deceased was also a gambler and played in the games conducted by plaintiff in his place, and that the check had no valid consideration, but was given to cover Murchison's losses in these gambling games.

Counsel for defendants do not claim that they produced evidence establishing to a certainty that the consideration for the check was a gambling debt, but contend that the allegations of the answer and the proof which they submitted on the trial were such as to shift the burden to plaintiff, and that it was his duty to make proof of a valid and legal consideration for the check.

The testimony shows that Frank M. Friel, the plaintiff, the payee of the check, lived at the Hotel Bentley in Alexandria, Louisiana; that he occupied room 503 of the hotel, where he sleeps; that he owns and operates a cigar and news stand in the lobby of the hotel.

It is also shown that he is the president of a chartered club known as the "Pleasure Club" or the "Hotel Bentley Club," which operates and conducts gambling games, principally "stud poker."

These games are played in room 503 of the Hotel Bentley, plaintiff's private quarters. Plaintiff sometimes, but not always, plays in these poker games. The games are conducted and "banked" by a man named Ratcliff, who is a member of the board of directors of the club, and who is paid $15.00 per week by the club for his services. Some of the witnesses testified that they did not know it to be true, but that it was generally understood that it was Friel's club. Friel testified that he was a member of the board of directors and president of the said club and that he played poker there at times, but said the games were conducted by Ratcliff and Campbell, the other directors, and this is not disputed by any of the witnesses.

As already stated, Ratcliff testified that he operated and conducted the games for the club.

There is no testimony to show that Friel ever had any connection with the club except as a member of the board of directors and president thereof, and nothing to show that he had anything to do with the poker games conducted in his room except to participate therein as a player; but the fact that Friel is president of the club and that it is at his headquarters, in his private room, that the gambling is done, indicates that he is the moving spirit therein and at least responsible for what goes on in the club.

Defendants called and examined sixteen witnesses. Four of these had played poker in this club, but only one of the four, W. H. Ratcliff, who conducts the games, had seen Murchison, the maker of the check, play therein. Ratcliff testified that he had known Murchison for five or six years, and had seen him play in only one game there, but he does not say when that was. He testified that he had seen him play at other places, but not more than three or four times during the time that he had known him.

Plaintiff testified that Murchison had played poker in his club, and he was asked how often, and he said:

"He played poker years ago, and then maybe a few times in the last twelve months or two years, but not often."

The check is dated April 17, 1924, and Friel gave his testimony on March 16, 1925.

Friel's testimony that Murchison had played a few times in the last twelve months or two years indicates that he had probably played there about the date of this check, although none of the witnesses say that he played on or about that date.

The testimony of all of the witnesses who played in the games conducted in Friel's room is that the gambling games indulged in was that of "stud poker," and that there was a chance of a player's losing heavily therein, some of them having lost considerable sums. From their description of the games it is not improbable that Murchison or any other player could have lost the amount of this check at one sitting.

So far as the testimony shows, Friel had no business in Alexandria or elsewhere except the cigar and news stand in the lobby of the Hotel Bentley and this gambling club. It is therefore hard to conceive how Murchison could have become indebted to Friel in the amount of the check except through his connection with the gambling games. There is no suggestion nor intimation either in the pleadings of the testimony of any witness who was called to the stand that there was any business relation at any time prior to the signing of this check between the plaintiff and Murchison. To say the least, it is highly probable, in view of the fact that there is nothing to indicate that Friel, the plaintiff, had ever had any business connection with Murchison, the maker of the check, and in view of the further fact that Murchison was a gambler and played in Friel's gambling establishment, that the check was given for a gambling debt.

The execution of a note or a check raises the presumption of a just and valid consideration, and when the debtor pleads want of such consideration the burden is upon him to establish that plea.

. Pack vs. Chapman, 16 La. Ann. 367, and authorities there cited.

Irving vs. Edrington, 41 La. Ann. 671, 6 South. 177.

Gilbert vs. Siess, 40 La. Ann. 667, 4 South. 874.

But our courts long ago held that while that is true, yet when the existence of the consideration is expressly put at issue and doubt or suspicion is cast upon its reality, the burden of proving the consideration is shifted to the payee.

Martin vs. Donovan, 15 La. Ann. 41.
Wooton vs. Harrison, 9 La. Ann. 234.
Succession of Martin S. Coste, 43 La. Ann. 144 (156), 9 South. 62.

In Courtebray vs. Rils, 9 Rob. 511, the court held that the allegation in the answer

"* * * that the plaintiff's claim is neither just nor well founded puts the justice of the claim at issue and indirectly denies the statements on which it is based, throwing on the plaintiff the burden of proving his allegations."

Defendants, in answer, set up that the plaintiff is manager and proprietor of a gambling house in Alexandria; that prior to the death of Murchison he had frequented this gambling establishment and had indulged in gambling games therein; that Friel, the plaintiff, actually participated in these games.

The testimony adduced by defendants shows that plaintiff was proprietor of this gambling establishment, that he played therein, and that Murchison, the maker of the check, also gambled in this club. It

also shows that plaintiff had no other business except the cigar and news stand.

These facts are admitted by plaintiff as witness in his own behalf.

The question naturally arises, if Murchison owed plaintiff $1,429.00, what was it for?

It is not probable that Murchison could have become indebted to plaintiff for goods sold him at the cigar stand. To say the least, the check was given out of the usual course of business.

All this causes doubt and suspicion to arise as to whether the check sued on was given for a valid and legal consideration.

We think and hold that under the circumstances of this case the burden was shifted back to plaintiff to prove the real consideration for which the check was given.

Plaintiff rested his case solely upon the legal presumption which flows from the issuance of the check. The consideration of the check was impugned on the answer of the defendants and in the testimony adduced by them. The legality of the consideration having been thus challenged and the testimony having cast suspicion on the transaction, it was plaintiff's duty to speak and enlighten the court. Especially is this true in view of the fact that Murchison, the maker of the check, is dead and that plaintiff is the only one who is in possession of knowledge of the transaction. Under the circumstances plaintiff owed a duty to the court which he has not performed.

While we think the plaintiff has not made out his case, and that the judgment of the lower court must be reversed, yet we are not satisfied that it is proper to reject plaintiff's demand outright; our conclusion is that a judgment of non-suit is proper.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed and that plaintiff's suit be dismissed as in case of non-suit at his cost.