## McKNIGHT v. CORNET.
### No. 14105.

Court of Appeal of Louisiana. Orleans.
Oct. 17, 1932.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellant.

Delvaille H. Théard, of New Orleans, for appellee.

WESTERFIELD, J.

William McKnight brought this suit against Mrs. Anna B. Cornet, as the universal legatee in possession of the property of her deceased husband, A. S. Cornet, on the following written document:

$600.00  Duvic, La. Feby. 14, 1920.
"To whom it may concern

"In the event of my death I agree to pay to W. McKnight the sum of six Hundred Dollars.

"A. S. Cornet."

The suit is defended upon the ground, first, that the instrument sued on is testamentary in character and has been revoked by a subsequent will; second, want of consideration.

■ On the first point the question presented is whether the document may be said to be an acknowledgment "in præsenti," or a disposition "in futuro" to take effect at Cornet's death. The fact that Cornet agreed to pay to McKnight "in the event of my death" is not sufficient to stamp the writing as testamentary in character, if it otherwise appears, expressly or impliedly, that it was intended as a recognition of a present indebtedness, the rule being, as stated in a note appearing in the 2 A. L. R. page 1474: "However, an instrument for the payment of money cannot be enforced as a note against the estate of the promisor, until whose death payment was postponed, unless it either expressly or impliedly recognizes an existing present indebtedness, since the lack thereof, together with the fact that payment is postponed until death, makes the instrument testamentary in character."

Our attention is directed to the case of Cover v. Stem, 67 Md. 449, 10 A. 231, 232, 1 Am. St. Rep. 406, where it was held that an instrument reading "at my death, my estate or my executor pay to July Ann Cover three thousand dollars" was a posthumous disposition and not a note, because, as stated in that case: " * * * In the instrument before us, there are no words that create a debitum in præsenti; there are no words that create the relation of debtor and creditor in the lifetime of the parties to the instrument; but the words employed simply import a posthumous disposition of a part of the estate of the maker of the instrument, and nothing more."

The court considered the case to be similar to another Maryland case, Byers v. Hoppe, 61 Md. 206, 48 Am. Rep. 89, "the only real distinguishing feature between the paper in that case [Byers Case] and the paper in this is that the paper in the former was not under seal, and the paper in this is. That, however, can make no substantial distinction in determining the real character of the instrument, as wills are more frequently executed under seal than otherwise. Nor can the fact that the instrument was delivered to the party to whom payment was directed to be made, change the real nature of the instrument. For the principle is well settled that an instrument may be in the form of a deed, signed, sealed, and delivered as such, and still, if it be apparent that the party intended a posthumous disposition of his property, the instrument not being operative until after his death, such instrument will be regarded as testamentary."

On the other hand it has been held that, if it appears that an instrument calling for the payment of money at the death of the promisor was intended as a testamentary disposition, it may not be enforced as a note, though in the form generally used for notes. Graves v. Safford (1891) 41 Ill. App. 659, on appeal, 56 Ill. App. 499.

In The Succession of Beard, 14 La. Ann. 121, a paper reading:

"Due Mrs. Sarah E. Andrews, the sum of two thousand five hundred dollars, payable to her order, out of the proceeds of my estate, after my death.        J. A. Beard.

"New Orleans, June 15th, 1855,"

was held to be an evidence of indebtedness, and not a will.

In Succession of Ravain, 168 La. 413, 122 So. 274, 275, the court considered a paper reading as follows:

"This is to acknowledge that my brother Albert A. Ravain is owner of ½ interest in my store * * * in case I should die at any time,"

and held that it was not testamentary, quoting articles C. C. arts. 1570 and 1571. The court said:

"The document in question does not name the brother of deceased as legatee nor refer to him at all as an heir. Nor does it contain the words 'give,' 'donate,' 'bequeath,' 'devise,' or any other word clearly establishing that it is a disposition of last will.

"On the contrary, this document expressly 'acknowledges' a title in præsenti in the brother of deceased to a half interest in the store in question. * * *"

It is true that in that case Albert A. Ravain is acknowledged as the owner of one-half interest in the store, but "in case I should die at any time," and the court held that the words "in case I should die at any time" did not qualify the acknowledgment so as to make it a disposition "in futuro," but merely explained the reason for the acknowledgment of the interest of Ravain's brother "in order to furnish his brother with written evidence to secure and protect his title in the event of the death of John H. Ravain."

■■ It will be observed that the words "in case I should die at any time" are strikingly similar to the words employed by Cornet. Cornet agreed to pay McKnight $600 in the event of his death, and Ravain acknowledged his brother to be the owner of a half interest in his store in case he should die at any time. Ravain makes definite acknowledgment of his brother's interest in his store in case he should die, whereas Cornet agrees to pay a sum of money in the event of his death, but Ravain was dealing with a half interest in his store and Cornet a sum of money, and both employed the most appropriate terms to express their intention, Cornet introducing the subject with the words "to whom it may concern." But, as has been stated in the authorities quoted by us, the important thing is the intention of the author of the instrument. We believe Cornet's intention to be disclosed upon the face of the instrument, but there is in the record evidence to the effect that Cor-

net and McKnight were partners and that Cornet lived with McKnight for a number of years following the death of his first wife, which occurred in McKnight's home; that Cornet had, just prior to the execution of the instrument sued on, requested the return of a will which he had made and left with McKnight; that in the will several legacies were made to McKnight and his wife in cash and in kind, the aggregate of the cash disposition amounting to $600; that the purpose of obtaining the will from McKnight was to destroy it and execute a new one in favor of his intended wife; that Cornet had made a number of wills and was familiar with the form of testamentary disposition. These wills have been introduced in evidence and they are olographic in form and indicate that Cornet was very familiar with the customary words and phrases usually found in wills. We infer from this evidence that Cornet intended to acknowledge himself indebted to plaintiff and to defer payment of the obligation until his demise. His motive was probably sentimental, and it may be, as counsel for defendant himself suggests, that he was actuated by the same sense of obligation which induced him to institute the plaintiff and his wife as legatees in his will, a feeling of gratitude for each of them for courtesies, or kindnesses, or services rendered his first wife in her last illness; or it may be, as counsel for plaintiff contends, that he wished to acknowledge a debt due plaintiff arising out of a business transaction, the payment of which had long been deferred. But, whatever, his motives, it seems clear to us that he did not intend a testamentary disposition, for it would have been a very simple matter to have repeated in his subsequent and last will the provisions of the former will.

Our conclusion is that the instrument sued on is a note or evidence of indebtedness "in præsenti" and not a testamentary disposition.

■ As to the defense of want of consideration, the instrument sued on is presumed to have been issued for a valid consideration, and the burden is upon the defendant, who challenges the consideration, to establish that defense. Pack v. Chapman, 16 La. Ann. 367; Irving v. Edrington, 41 La. Ann. 671, 6 So. 177; Gibert v. Siess, 40 La. Ann. 667, 4 So. 874. The burden of proving consideration shifts to plaintiff only when a sufficient showing has been made by the party pleading it to cast suspicion upon its reality. Martin v. Donovan, 15 La. Ann. 41; Wooten v. Harrison, 9 La. Ann. 234; Succession of Coste, 43 La. Ann. 144, 9 So. 62; Friel v. Murchison, 3 La. App. 559; 8 Corpus Juris, "Bills and Notes," § 1299.

In the case before us there has been no showing on the part of defendant which would create a doubt or suspicion of the reality of the consideration. Consequently defend-

ant must be held to her obligation as special pleader to establish her special defense, and the presumption of consideration which attaches to the instrument remains unimpeached.

The view we have taken of this point makes it unnecessary to consider the elaborate argument at bar and in the brief of counsel concerning the admissibility of parol evidence to prove the debt of a deceased person, in view of the provisions of Act No. 11 of 1926, or of the constitutionality of that act, which is assailed by plaintiff's counsel.

Our conclusion is that the judgment appealed from is correct, and it is, therefore, for the reasons herein assigned, affirmed.

Affirmed.