### Succession of GALIANO.
#### No. 17239.

Court of Appeal of Louisiana. Orleans.
April 22, 1940.

Rehearing Denied May 20, 1940.
Writ of Certiorari Denied July 18, 1940.

Joseph F. Blasi, Jr., of New Orleans, for opponent-appellant Ephraim Ciaccio.

George Piazza, of New Orleans, for Leon A. Galiano and others.

George Montgomery and M. C. Scharff, both of New Orleans, for administratrix-appellee Mrs. Marguerite Galiano.

WESTERFIELD, Judge.

Two separate appeals were prosecuted to this court on behalf of opponents to the final account of the administratrix of the Succession of Salvatore A. Galiano, from a judgment rejecting their claims. Ephraim A. Ciaccio, Jr., who claims $900 for services rendered decedent as a nurse, and Leon A. Galiano and Louis Anthony Danflous, Jr., co-executors of the Succession of Joseph Galiano and Leon A. Galiano and Charles Galiano, co-executors of the Succession of Mrs. Joseph Galiano, who claim $1,650, the amount of a promissory note alleged to be due by decedent, Salvatore Galiano, to the successions of Mr. and Mrs. Joseph Galiano, are the appellants.

Salvatore A. Galiano died intestate on June 8th, 1935. He left a widow in community, five brothers, one sister and six nieces and nephews, children of a predeceased sister. His succession was opened by Ephraim A. Ciaccio, one of his nephews, who sought to be appointed administrator. Mrs. Marguerite Galiano, the widow of decedent, opposed Ciaccio's application for letters of administration upon the ground that no administration was necessary and, in the alternative, in the event an administration was found to be requisite that she, as his widow in community, was entitled to preferment. The brothers, sisters, nieces and nephews of the deceased intervened on behalf of Ciaccio and declared that an administration was necessary because of certain items of indebtedness alleged to be due by the estate, which the widow in community had refused to recognize. They asked that the widow's opposition be dismissed and Ciaccio be appointed administrator. Among the items of indebtedness alleged to be due was a certain promissory note for $1,650, bearing the signature of Salvatore A. Galiano and payable to the order of Joseph Galiano.

Following a trial the court found that an administration was necessary and appointed both Ciaccio, the nephew and Mrs. Galiano, the widow, as co-administrators, the former to administer the separate property and the latter the community property left by decedent. On March 27th, 1937, Ciaccio filed, what purported to be, a final account of the co-administration of the succession. Mrs. Galiano, however, declined to sign it and subsequently filed an opposition to it. Among other items, there is listed the following claims:

"(1)—Claim by the executors of the 'Succession of Joseph Galiano, No. 210–307 of the docket of this Court and of the "Succession of Mrs. Joseph Galiano" ', No. 210–308 of the docket of this Court, against the Community Estate of decedent on a certain promissory note, dated July 23, 1930, due two years after date payable to the order of Joseph Galiano, Sr., with interest at 6% per annum from date until paid bearing the signature of Salvatore A. Galiano, decedent herein, which note is in the principal sum of $1,650.00 .

"(2) * * *

"(3)—Claim by Ephraim A. Ciaccio, Jr., against the Community Estate on a quantum merit for services rendered to the decedent involving nursing and otherwise attending him during his last illness for a period of about six months, valued by claimant at Five and 00/100 Dollars per day or approximately $900.00"

Above the listing of these claim appears the following: "There is a dispute between the co-administrators herein as to the validity of the following debts and they are submitted herewith for final determination by this Honorable Court."

The opposition filed by Mrs. Galiano to the final account of the co-administrator, is based upon the following contentions:

"That the claim made by the executors of the Succession of Mr. and Mrs. Joseph Galiano on a promissory note for $1650.00

is not due or if due should be paid equally by the separate estate and the community or at least in the same proportion as the funeral and law charges; that said alleged note is not due by the estate of Salvatore Galiano because there was no reason for him to sign such a note and so far as opponent knows he never signed said alleged note, but if it be his genuine signature at the end of the alleged note the opponent verily believes and so believing alleges that the signature was torn from a letter or other document signed by the deceased and the blank space between the letter or document that he signed was filled in in another handwriting and that no consideration was ever received by the deceased and there was no reason why he should be compelled to borrow money from his deceased parents or any other person.

"* * *

"That the claim of Ephraim A. Ciaccio, Jr., for $900.00 mentioned under paragraph (3) on the second page of said account is too vague and indefinite to permit of proof of same, is not due at all or if due is grossly excessive; that the same is an afterthought on behalf of the claimant, being made for the first time when said account was drawn up and that if any of said claim is due it should be paid in the same manner and proportion as the law and funeral charges, furthermore opponent specially pleads the prescription of one year against this claim."

She also pleaded the prescription of one, three and five years against the note. On May 11th, 1937, the court maintained the opposition of Mrs. Galiano to the claim on the note and the claim for nursing services, and ordered her to file an account of her administration of the community within twenty days. In response to this order, Mrs. Galiano, on May 26th, 1937, filed a final account of her gestion as administratrix of the community, omitting any reference to the claim on the note or the claim for nursing services. Her account was opposed by Ciaccio, her co-administrator and the claimant for nursing services, and by the executors of the successions of Mr. and Mrs. Joseph Galiano, the claimants on the promissory note, whereupon, after certain exceptions were overruled by the court, reference was made to Commissioner Luther E. Hall for a hearing. After a protracted trial, in which much testimony was heard, the Commissioner, in an exhaustive and able opinion, recommended that both claims be rejected. The Commissioner's report was adopted by the learned judge of the Civil District Court who used it as a basis of his judgment dismissing the opposition to the final account of Mrs. Galiano.

Considering first the claim of Ciaccio, we find that it is thus stated in his opposition to Mrs. Galiano's account: "That the community estate of this succession is indebted unto opponent on a quantum meruit for services rendered to decedent, Salvatore Galiano, involving nursing and otherwise attending him during his last illness for a period of about six months prior to his death, which services are valued by opponent at $5.00 per day or the total sum of $900.00".

To this claim the prescription of one year is urged based upon Article 3534 of the Revised Civil Code which provides, among other things, that the claims of workmen, laborers and servants, for the payment of their wages, are prescribed by one year, and upon Act No. 11 of 1926, which provides that parol evidence shall not be admitted to prove any liability against a deceased person unless the suit is brought within twelve months from the date of the death of the deceased. Counsel for opponent directs our attention to Article 3526 of the Revised Civil Code, to the effect that "prescription does not run against a beneficiary heir, with respect to the debt due him by the succession". Opponent is a nephew of decedent and an heir of his succession through representation of his deceased mother, a sister of decedent, and, therefore, in view of the provision of the article referred to, counsel contends that prescription should not run against him. The definition of a "beneficiary heir" as given in Article 883 of the Revised Civil Code, under the title of "Legal Successions" is as follows: "Beneficiary heirs are those who have accepted the succession under the benefit of an inventory regularly made."

It has been held that the term "beneficiary heir" applies also to one who may accept, as well as to one who has accepted, the succession with the benefit of inventory. Succession of Sloane, 12 La.Ann. 610. Whatever may be the situation with respect to the beneficiary heir in other matters, insofar as prescription is concerned it runs against the heir until he has accepted the succession with the benefit of inventory.

In H. Viala et al. v. Eugene D. Burguieres, 19 La.Ann. 149, in a syllabus by the court, it was held: "Prescription, in regard to claims which the heir may have against the succession, runs against himself, so long as he has not accepted the succession with the benefit of an inventory, and his acceptance as beneficiary heir cannot destroy prescription thus acquired against him during the interval of the opening of the succession. C.C. [arts.] 3492, 3493."

See, also, Cross on Louisiana Successions, page 385, Section 246.

 It is apparent that opponent is not a beneficiary within this definition, since there is no pretense that he has accepted or will accept the succession under benefit of inventory. Under Act No. 11 of 1926, the right of opponent to prove his claim by parol evidence is barred by the prescription of one year. However, counsel for opponent says that neither the prescription established by the codal article nor that established by Act No. 11 of 1926, relative to parol evidence, is applicable here because of the doctrine "contra non valentem agere non currit praescriptio". This maxim, as defined by our Supreme Court in the words of Broom in his Legal Maxims, means that "prescription does not run against a party unable to act". Taylor v. Succession of Sweetman, 184 La. 755, 167 So. 431, 433. Opponent contends that the action of Mrs. Galiano in opposing the administration of the succession prevented his assertion of his claim against the succession. The succession of Galiano was opened, by opponent, on July 30th, 1935, about two months after decedent's death, when he applied for letters of administration. On August 6th, 1935, Mrs. Galiano filed an opposition to Ciaccio's application for appointment as administrator. No effort was made by anyone to fix the opposition for trial until March 25th, 1926, when a motion to that effect was filed by opponent's counsel. The opposition was tried on June 26th, 1936, and judgment rendered the same day, though it was not until August 27th, 1936, or two months later, that the judgment was signed, and it was not until November 20th, 1936, that letters of co-administration were issued to opponent Ciaccio and decedent's widow, Mrs. Galiano. Counsel for opponent contends that it was not until matters reached this stage that he could urge his claim.

In Taylor v. Succession of Sweetman, supra, the Supreme Court quoted with approval from Corpus Juris, volume 13, page 799, as follows: "This maxim [contra non velentem, etc.] 'has been applied to prescriptions liberandi causa in three classes of cases: 1st. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; a class of cases recognized by the Roman law as proper for the allowance of the utile tempus. * * * 2d. The second class of cases are those where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the creditor from suing or acting. * * * 3rd. The third class of cases is where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.' Reynolds v. Batson, 11 La.Ann. 729, 730 (quot. Rabel v. Pourciau, 20 La.Ann. 131, 132; New Orleans Canal, etc., Co. v. Beard, 16 La.Ann. 345, 347, 79 Am.Dec. 582.)"

Ciaccio, in his testimony, stated that the widow was entirely to blame for the delay in urging his claim. To quote from the report of the Commissioner:

"He speaks of her antagonistic attitude towards him, that she cursed him at the taking of the inventory and there is even some testimony that she put a pistol in his back at that time. But there is not a line of testimony showing that the widow did 'any act effectually to prevent the creditor from availing himself of his cause of action.'

"As a matter of fact Ciaccio admitted (page 51) that the widow did not even know that any claim was going to be made by him against the succession until the opposition to the account."

Quoting further from the Commissioner's report: "All the widow did was to oppose Ciaccio's confirmation as Administrator, which she had a perfect right to do. It was not the act of filing the opposition which prevented Ciaccio from asserting his claim, but the fact that the opposition was not tried. Irrespective of what other remedies Ciaccio might have availed himself of, he certainly could have had the opposition to his appointment determined at an early date. If the trial thereof had resulted in his appointment he could have placed his claim on his Administrator's account. If the trial thereof

had resulted in the widow's appointment, he could have sued the succession immediately."

The Commissioner is referring to the fact that Ciaccio waited seven months, or from August 6th, 1935, the date the widow filed her opposition to his appointment as administrator, until March 25th, 1936, before making any attempt to bring the matter to a trial. We are of opinion that the Commissioner was correct because not only did Ciaccio wait for seven months before attempting to fix the opposition for trial, but he allowed three more months to elapse without attempting to have the matter specially fixed by setting forth, in a proper motion, that his claim was about to prescribe, and urging that the opposition be determined before prescription had run. It seems to us that Ciaccio's bill for nursing services was an afterthought for, certainly, if he had intended, from the beginning, to bring this claim against the succession, he was anything but vigilant in prosecuting it, for the first attempt to enforce it was when he filed his account on March 27th, 1937, nearly two years after the death of decedent, his claim was, therefore, prescribed under Article 3534 of the Revised Civil Code and was not susceptible of proof by parole testimony under Act No. 11 of 1926.

In passing we might say that we agree with the Commissioner in his statement that: "The small services rendered by Ciaccio both in 'nursing' and driving the deceased's automobile were not as a result of any demand or request of the deceased or on the promise of. remuneration at his death, but were in the nature of voluntary services such as any unemployed nephew would render who was being fed by his uncle."

Our conclusion is that the claim of the opponent Ciaccio was properly dismissed.

Passing now to a consideration of the claim of the executors of the successions of Mr. and Mrs. Joseph Galiano, the father and mother respectively of decedent, Salvatore Galiano, as we have said, this claim is based upon a promissory note reading as follows:

"N.O July 23–1930

"Two years after above date I promise to pay to the order of my father Jos Galiano Sr The sum of $1650.00 Sixteen hundred and fifty dollars with interest @ 6% year untill paid.

"(Signed) Salvatore A. Galiano".

It is opposed by the administratrix upon the ground that the signature is not genuine and, in the alternative, if it be the genuine signature of the deceased, it is fraudulent because the signature was torn from a letter or other document and the body of the note written upon it by some other party, and also that no consideration was ever received by the deceased. The Commissioner in his report found that the signature to the note was genuine and that the body of the note was written by some unknown person other than the decedent, Salvatore Galiano. In his report he described the note as follows:

"I find that the note is written in lead pencil on a scrap of paper which very obviously has been cut or torn from a larger sheet. The only edges of the note which coincide with the edges of the original sheet of paper are the right edge and the bottom. The conjunction of these two sides forms a right angle. The other three corners are not right angles, and the top and left edges of the scrap of paper are obviously cut on a slight bias.

"The back of the note bears a lithographed picture of the building of 'E. B. Harral Coffee Commission', and it may be inferred that the scrap was cut from a bill head or sheet of paper belonging to that concern.

"The picture viewed in conjunction with the only right angle corner of the paper shows that the note was written on the reverse side of a 2 or 2½" strip cut lengthwise from the original sheet, the bottom and right edge of the note forming respectively the left edge and top of the original sheet.

"On its face, the note is so irregular as to incite suspicion sufficient to justify the most searching inquiry into its history."

The note was not originally inventoried in the Succession of Joseph Galiano, who died December 20th, 1934, about six months before Salvatore Galiano, and two years after the maturity of the note. It first appeared in the hands of Leon Galiano, one of Joseph Galiano's sons, who was connected with him in business, and who was one of the executors of both his father's and mother's successions, approximately six months after the date of the death of Salvatore Galiano, his brother. The explanation which Leon Galiano gives of this circumstance is that the note was found in his father's safe between the pages of an

old title or insurance policy; that because of its location it was overlooked by him when the inventory in his father's succession was being prepared. In addition to this evidence, which tends to cast suspicion upon the validity of the note because of its form and its delayed appearance, the administratrix offered testimony to show that Joseph Galiano, according to his bank books and homestead books, did not have sufficient cash on hand to make a loan of $1,650, at the time the loan was made, July 23rd, 1930, and also that Salvatore Galiano, her husband, was in possession of more ready cash than his father and, therefore, unlikely to seek the loan. Moreover, his bank book does not indicate a deposit of that size anywhere around that time. At this point the Commissioner, before whom the evidence was taken, held that the administratrix had produced sufficient evidence to overcome the presumption of consideration and that, in consequence, the burden of proving consideration shifted from the pleader to the holder of the note. To meet this situation, opponents put Charles Galiano, another son of Joseph Galiano, and one of the co-executors of his mother's succession, on the witness stand, for the purpose of proving the consideration. Charles Galiano testified that on or about July 23rd, 1930, the date of the note, he was in impecunious circumstances and approached his father for the purpose of making a loan of $1,650, to pay certain debts, but that his father refused upon the ground that he did not have the money; that as he was leaving his father's home, he met his brother, Salvatore, to whom he related his unsuccessful attempt to secure a loan from his father and the reason that prompted him to ask for it; that Salvatore replied "I will get the money from the old man"; that Salvatore got the money and, to secure it, Charles executed a chattel mortgage bearing upon the movables and stock in trade contained in his business establishment on N. Carrollton Avenue. The chattel mortgage was introduced in evidence and is dated July 24th, 1930, one day after the date of the note. Charles Galiano's testimony is seriously affected, if not entirely discredited, by the fact that he is shown to have transferred a piece of property to his brother, Leon, retaining a counter letter which he subsequently gave to Leon to put in his father's safe because "I was going bankrupt and did not want that counter letter hanging around", and by the further fact that when he did go into bankruptcy, following a voluntary petition filed in the United States District Court for the Eastern District of Louisiana, on April 20th, 1931, he listed the chattel mortgage as due Salvatore A. Galiano and neither Salvatore nor anyone else attempted to prove up any claim in bankruptcy based upon the chattel mortgage, which was subsequently found in the safe of Joseph Galiano, after his death. The Commissioner found that on July 23rd, 1930, the date of the note, that:

"Joseph Galiano did not have anything like $1650.00 to lend, and in view of the fact that no attempt was made by anyone to prove the chattel mortgage claim in the bankruptcy proceedings, and in view of the fact that the chattel mortgage notes were not held by the payee, Salvatore, but by his father Joseph, to whom the counter letter in Leon's favor was also delivered, I believe the chattel mortgage was simply a fraudulent attempt on Charles Galiano's part to encumber his assets anticipating bankruptcy.

"I furthermore do not believe any part of Charles Galiano's testimony which seeks to explain the origin of and the consideration given for the note sued on in these proceedings."

He concluded that while he was unable to find that the note was manufactured, and, in fact, a fraud because of lack of direct testimony to that effect, and that, consequently, he was obliged to hold it to be a genuine note, that there was no consideration given or received for it. Counsel for opponents contend that the burden of proof of want of consideration, at all times, rested upon the administratrix and that she failed to meet this burden by countervailing proof. They assert that the rule announced by the Commissioner concerning the shifting of the burden of proof is not recognized by the late jurisprudence of this State, whatever may be said of its original force. They cite Gulf Lumber Company v. Bender, 173 La. 471, 137 So. 856; Daniel v. Hernandez, La.App., 173 So. 482; Breaux v. Campbell, 1 La.App. 356; Mercantile Adjustment Agency v. Palmisano, 2 La.App. 443; Brown v. King, 7 La.App. 570; Hibernia Bank & Trust Company v. Champagne, 8 La.App. 664. The authorities relied upon do not sustain the position for there is no reference in

any of the cited cases to the shifting of the burden of proof, but simply an assertion of the general rule to the effect that a plea of want of consideration addressed to a promissory note places the burden of proof upon the maker of the note. For example, in the Gulf Lumber Company case, we find the following, which is typical of the holding in all of the cited cases:

"This suit is brought to enforce payment of two promissory notes made by defendant to the order of plaintiff. The defense is lack of consideration, because the notes, which were obtained by plaintiff through the misrepresentations of its auditor and attorney, were executed to cover the purchase price of certain cast-iron pipe previously sold to defendant and paid for in full. Plaintiff was given judgment, and the defendant appeals.

"The issue between the parties is one solely of fact, with the burden of proof resting upon defendant. The trial judge rejected, and we think correctly, the defense urged against plaintiff's demand".

However, in Fifth District Finance Company, Inc., v. Smith, La.App., 179 So. 612, 614, this court said: "The question of consideration having been expressly put at issue and a suspicion (more than a suspicion in this case) having been created as to its reality, the burden of proving the consideration was upon plaintiff, though originally that special defense having been raised by defendant he carried the burden of proving the negative. See Friel v. Murchison, 3 La.App. 559; Columbia Restaurant v. Sadnovick, La.App., 157 So. 280; McKnight v. Cornet, La.App., 143 So. 726."

■ In Corpus Juris, Volume 8, Page 994, Section 1299, we find the following: "It is a general rule, supported by a multitude of decisions, that the burden of proof is on defendant to establish a defense of want, failure, or illegality of consideration. These decisions, while for the most part apparently without qualification on their face, are subject to explanation, at least according to the rules laid down in many jurisdictions, by adding that what is meant is that defendant must produce some evidence to overcome the presumption of consideration arising from the production of the instrument, in order to shift to plaintiff the necessity for proving facts relating to the consideration. In other words the rule, at least in most of the states, is that although a bill or a note imports in itself a consideration, yet when evidence has been introduced to rebut the presumption of consideration the burden shifts to plaintiff to show by a preponderance of the evidence that there was a consideration; and this is so even where the instrument on its face recites a consideration as by the use of the words 'value received' * * *".

In American Jurisprudence, Volume 8, Verbo "Bills and Notes", Section 1006, after stating that the rule in the majority jurisdictions is the same as it is here, says: "Under this view, which placed upon the plaintiff the ultimate burden of proving consideration by evidence that preponderates, the defendant is required to do no more than counterbalance the presumption or prima facie case raised by the instrument itself. The rule is not changed by the fact that the instrument, on its face, expresses that it is given for 'value received', such expression having no more effect than to make out a prima facie case for the plaintiff."

■ As pointed out by the Commissioner the presumption of consideration is overcome by the evidence offered by the administratrix, the details of which are discussed in the Commissioner's report and, to some extent, by us. Suffice it to say, that the evidence does not preponderate in favor of the consideration when all the evidence produced by both sides is considered. It follows that the judgment dismissing opponents' claim is correct.

For the reasons assigned, the judgments appealed from rejecting the claim of Ephraim Ciaccio and the claim of Leon Galiano and Louis A. Danflous, Jr., executors of the Succession of Joseph Galiano and Leon Galiano and Charles Galiano, executors of the Succession of Mrs. Joseph Galiano, against the Succession of Salvatore A. Galiano, are affirmed at the cost of appellants.

Judgments affirmed.