## TUCKER v. LEGETTE.
### No. 6160.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 13, 1941.

Writ of Certiorari and Review Denied Feb. 3, 1941.

Dickson & Denny, of Shreveport, for appellant.

Irwin & Cowles, of Shreveport, for appellee.

DREW, Judge.

On the 29th day of September, 1932, the plaintiff entered into a contract with the Caddo Arms & Cycle Company, Incorporated, whereby the plaintiff entered the employ of said company and loaned it the sum of $1,500 for which sum said company executed its promissory note in the body of the contract itself for the repayment of said sum in six equal monthly installments following the termination of plaintiff's services with said company, with 8 per cent. per annum interest from the date of said contract until paid and 10 per cent. attorney's fees if placed in the hands of an attorney for collection. In this contract the plaintiff is given the right to purchase stock in the Caddo Arms & Cycle Company, Inc., for the amount loaned, but the evidence shows that this option was never exercised.

The defendant, W. B. Legette, bound himself, in solido, on said contract with the Caddo Arms & Cycle Company. A copy of this contract is in evidence.

On August 11, 1934, plaintiff was induced to sign a petition to the creditors of the Caddo Arms & Cycle Company for a moratorium or respite to work out the affairs of said company and liquidate its indebtedness over a period of time, in which petition it was provided, among other things, that monthly income-bearing notes would be executed in favor of the creditors upon approval of the plan by the creditors. The evidence shows that the plan was not put into effect, despite every effort to do so, as the creditors of said company would not concur therein. The evidence further shows that the income-bearing notes were never issued in connection with this proposed re-financing plan and particularly were no income-bearing notes ever issued to plaintiff.

On August 12, 1934, the plaintiff, after carefully reading the contemplated plan of working out the company's affairs, realized that it was indefinite and uncertain and the prospects of his collecting the indebtedness due him by said company, and guaranteed by the defendant, were doubtful, so he immediately directed that his name be removed from the petition. Thereupon the defendant had Mr. H. K. Oliphant, secretary-treasurer of the Caddo Arms & Cycle Company, come from New Orleans to Shreveport with a view of adjusting this matter to plaintiff's satisfaction. As a result of Mr. Oliphant's intervention in the matter and of conferences held between plaintiff, defendant, Mr. Oliphant and defendant's attorney, the defendant agreed to give plaintiff security for the indebtedness due him and on August 17, 1934, pursuant to this agreement, a contract of pledge was entered into between plaintiff and defendant whereby defendant delivered a certain mortgage note for the principal sum of $1,500 in pledge to plaintiff and delivered a certain diamond ring to Mr. Oliphant for delivery in pledge to the plaintiff after the expiration of one year, provided said indebtedness had not then been liquidated. In consideration of this security, plaintiff at the same time issued and signed a letter directing that his name be reinstated on the above-mentioned petition to the creditors. The testimony of all parties bears this out and a copy of this contract of pledge is in evidence.

The plaintiff now sues for judgment on the original contract and asks that the pledge, as evidenced by the contract of date August 17, 1934, be recognized and enforced to satisfy said judgment.

The principal defense is that the contract of pledge is void for lack of consideration in that the plaintiff did nothing to assist in carrying out the proposed moratorium.

The lower court awarded judgment for plaintiff, and defendant has prosecuted this appeal.

The defendant admitted that he was president, general manager and the principal stockholder of the Caddo Arms & Cycle Company, Inc., at all times between September 29, 1932, the date of the original contract between said company and the plaintiff, until said company was forced to close its doors in the month of January, 1935, on account of hopeless insolvency. It is evident therefore that the defendant had a vital, personal interest in securing the signature of the plaintiff to the above-mentioned petition to the creditors, as otherwise the defendant realized that his business was then hopelessly lost with no prospect of salvaging same except through plaintiff's co-operation, and except through obtaining the signature of the plaintiff to the petition to the creditors; and, on the other hand, the plaintiff well realized the condition of said company's affairs and would not have signed said petition to the creditors unless this security was delivered to him. Therefore, there was mutual consideration between the parties for the execution of said contract of pledge and the delivery of the pledge.

While the defendant under direct examination attempted to give the impression that he received no co-operation from the plaintiff for the execution of the above-mentioned contract of pledge and the signing of the aforesaid petition to the creditors, it is evident from defendant's own testimony that such was not the case. The defendant admitted paying the plaintiff the amount of $50 per month on the indebtedness, in accordance with the contract of pledge, after such contract of pledge was executed up until the time the business of Caddo Arms & Cycle Company failed; and in connection with these payments and the status of the parties generally with respect to the validity of said contract, we call attention to the following testimony of the defendant:

"Q. I will ask you this Mr. Legette. Why did you pay Mr. Tucker $50.00 per month pursuant to the terms of that agreement from the date of that agreement until the business failed and was closed out? A. He was carrying out his contract at that time when the business closed up.

"Q. He was carrying out his contract? A. As long as the business was open I had given him this collateral but I wasn't in position to give him anything further, and he had what I deemed was sufficent amount of collateral to settle the debt.

\* \* \* \* \* \*

"Q. Mr. Legette, did you recognize the validity of that agreement between yourself and Mr. Tucker of date August 17, 1934, until the business of the Caddo Arms & Cycle Company closed its doors? A. Yes.

\* \* \* \* \* \*

"Q. At any rate, according to that agreement, Mr. Tucker is entitled presently to be in custody of that ring as pledgee, isn't that true? A. Yes."

In other words, the defendant recognized and honored the contract of pledge from August 17, 1934, until the date the Caddo Arms & Cycle Company closed its doors because of insolvency in January, 1935, and still admits that the plaintiff is entitled to hold the collateral given him under the terms of said contract of pledge. How, then, can the defendant now say that said contract was without consideration and that the plaintiff did not discharge his obligations thereunder when he admits that the plaintiff did live up to his contract until the business of Caddo Arms & Cycle Company, Inc., completely failed? Certainly there was nothing for the plaintiff to do or that he could do after such failure.

The evidence further shows conclusively that the matter of putting said proposed moratorium into effect was primarily in the hands of Mr. Legette and his attorney and that the plaintiff was not called upon to do anything which he declined to do. On the contrary, Mr. Legette admits that the plaintiff was at all times in the store attending to his duties and that it was necessary that he be there for the conduct of the business.

Through inadvertence, the defendant was not allowed credit for the five payments in the amount of $50 each in the judgment rendered by the trial court, so plaintiff has filed a remittitur of that amount in this court and concedes that the judgment should be modified to that extent.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended by allowing a credit of $250 as it was paid, viz., $50 on September 15th, October 15th, November 15th and December 15th, 1934, and $50 paid on

January 15, 1935, and as amended, the judgment of the lower court is affirmed. Costs of the appeal to be paid by plaintiff and all other costs to be paid by defendant.