W.B. LeGette, under date of September 29, 1932, guaranteed in writing the payment of a loan of $1,500 which W.B. Tucker made to the Caddo Arms Cycle Company of Shreveport, Louisiana.
On August 17, 1934, the named individuals entered into a written contract respecting the guaranty, and thereunder LeGette pledged certain property to Tucker to secure the payment of the mentioned indebtedness. Included was a mortgage note signed by LeGette for $1,500, dated August 17, 1934, and due one year thereafter.
Tucker on October 5, 1938, instituted a suit against LeGette alleging a breach of the pledge contract, the proceeding bearing No. 75,320 on the docket of the First District Court of Caddo Parish, Louisiana; and therein he sought a judgment for $1,500, less credit for payments previously made, with recognition and enforcement of his rights as pledgee against the mortgage note and the other pledged property.
The suit was strenuously resisted through the medium of numerous and various exceptions filed and also on the trial of its merits.
On January 15, 1940, or one year, three months and ten days after the litigation's commencement, Tucker recovered judgment in the district court for the amount allegedly due, less certain credits, and ordering the mortgage note, together with other pledged property, sold by the sheriff to pay and satisfy the indebtedness.
On a devolutive appeal to this court by LeGette, the judgment was amended to the extent of allowing credits that were inadvertently not listed; otherwise, it was affirmed. 200 So. 31. A rehearing was denied on January 13, 1941. The Supreme Court, on February 3, 1941, refused to grant a writ of certiorari.
Meanwhile, in view of LeGette's perfecting only a devolutive appeal from the judgment, Tucker caused to be made, under a writ of fieri facias, the seizure and sale of the pledged mortgage note; and at the adjudication on August 28, 1940, he purchased it for the sum of $1,000.
The instant action, commenced by Tucker against LeGette on September 15, 1941, has for its purpose the enforcement by ordinary process of the purchased note and its securing real estate mortgage.
In the petition, after describing such instruments, plaintiff alleges:
"That said mortgage note described in paragraph 1 above is dated August 17, 1934, maturing one (1) year after date, or August 17, 1935, and might appear on its face at the present time to have prescribed within five (5) years from its maturity, but petitioner shows and alleges in the affirmative that the prescription of said note was suspended during the period of time from October 5, 1938, until January 15, 1940, a period of one (1) year, three (3) months and ten (10) days, and that said note has therefore not prescribed, but on the contrary is presently in full legal force and effect, for the reasons hereinbelow set forth."
Then follow allegations describing LeGette's actions in the district court in cause No. 75,320, which actions Tucker urges produced a suspension of prescription on the *Page 341 
mortgage note during the mentioned period of time.
The prayer of plaintiff Tucker is for judgment against LeGette for the amount due under the note, it to operate only in rem against the mortgaged real estate, and for recognition and enforcement of the mortgage.
Defendant LeGette filed an exception of no right of action and a plea of prescription of five years liberandi causa. These were overruled following a hearing on them in which evidence was adduced.
In his answer, defendant denied that there was a suspension of prescription on the note, as alleged by plaintiff; and again he pleaded that the obligation had prescribed by reason of the elapse of five years since its maturity.
The case was regularly tried and there was judgment in plaintiff's favor in accordance with his prayer. From it defendant appealed devolutively.
The appeal presents only the question of whether or not the prescription of five years has accrued on the mortgage note.
As above shown the instrument in question matured on August 17, 1935, and this action thereon was not commenced until September 15, 1941, or more than six years later. On its face prescription has run. But plaintiff shows that if one year three months and ten days are deducted from that elapsed time, as he urges should be done, the obligation was in full force and effect when this suit was instituted. It was during such period, he contends, that defendant in the district court resisted and prevented his enforcing the contract of pledge, the enforcement thereof being necessary before resorting to a suit on the note; and the acts of resistance caused a suspension of the current of prescription.
The reply of defendant is that the note could have been sued on at any time after its maturity, and that he did nothing to prevent the exercising of plaintiff's rights.
Article 3165 of the Louisiana Civil Code provides:
"The creditor can not, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act."
The written contract of pledge contained no authority for the sale or other disposition of the mortgage note by the creditor Tucker; and, on LeGette's breach of that contract he was compelled, as provided in the quoted codal provision, to obtain judgment on the indebtedness and effect a sale of the note through judicial process.
But defense counsel argue that as the pledged property under consideration was a credit, it being a promissory note, plaintiff had the right under Civil Code Article 3170 to file suit thereon when it matured on August 17, 1935. The named article reads:
"If the credit which has been given in pledge becomes due before it is redeemed by the person pawning it, the creditor, by virtue of the transfer which has been made to him, shall be justified in receiving the amount, and in taking measures to recover it. When received, he must apply it to the payment of the debt due to himself, and restore the surplus, should there be any, to the person from whom he held it in pledge."
This codal provision, as was held by the Court of Appeal of the First Circuit in Rovira v. Martel, 7 La.App. 240, obviously has reference to a claim against some person other than the pledgor of the credit. By virtue of that authority, when the pledged obligation of a third person matures before the due date of the pledgor's indebtedness, the pledgee may and can receive voluntary payments or file suit on the obligation. There is no legal hinderance to either of those steps. It is different, however, when the pledgor is the obligor under the pledged claim. In a situation of that kind the pledgee is without right to sue until the debtor's primary obligation matures. This obligation, it must be remembered, represents the contract of *Page 342 
the parties; and a suit on the collateral or pledged claim before the principal indebtedness is due would do violence to the contract.
Article 3170 would be applicable if LeGette's pledge had been of a claim against some third person. But it was not. Besides being the pledgor, LeGette was the maker of the collateral mortgage note. Tucker could do nothing until the principal indebtedness, evidenced by the contract of pledge, became due and payable. After that occurred Tucker resorted to his only available remedy, a suit on the pledge contract as required by Civil Code Article 3165, discussed supra.
The judgment, however, was not immediately obtainable, the reason for this being LeGette's resistance to plaintiff's demand. Filed in the proceedings were a prayer for oyer, exceptions of no cause and no right of action, a plea of nonjoinder, and a motion to strike. Following consideration and overruling of these pleas, LeGette answered. The case was then tried on its merits and judgment rendered in Tucker's favor. A motion for a rehearing was filed and overruled. When the judgment was presented for signing, LeGette objected to its form. Argument of counsel was had on the objection, after which the signing occurred. A short time later the judgment became executory, no suspensive appeal having been perfected.
There is a maxim or doctrine appropriate to prescriptions liberandi causa reciting "contra non valentem agere non currit praescriptio." It means that prescription does not run against a party who is unable to act. Three classes of cases are affected by it, one being where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. Reynolds v. Batson, 11 La.Ann. 729; New Orleans Canal Banking Co. v. Beard, 16 La.Ann. 345, 79 Am.Dec. 582; McGuire v. Monroe Scrap Material Co. et al., 189 La. 573,180 So. 413; Taylor v. Succession of Sweetman, 184 La. 755, 167 So. 431.
If a person, under pretense of rights afterwards judicially determined to be unfounded, uses process of law to restrain another in the prosecution of a lawful claim, his wrongful resistance serves to suspend the running of prescription pending the provoked litigation. Boyle v. Mann, 4 La.Ann. 170; Stanbrough v. McCall, 4 La.Ann. 322; Martin v. Jennings, 10 La.Ann. 553; Harvey v. Pflug, 37 La.Ann. 904; Burglass v. Villere,170 La. 805, 129 So. 209; Ethridge-Atkins Corporation v. Tilly, La.App., 178 So. 669.
The reason underlying the discussed doctrine is that "prescription is founded on the negligence of the creditor; and a creditor cannot be held to have been negligent in bringing his suit, so long as it was not possible for him to bring it usefully." Jones v. Texas Pacific Railroad Co., 125 La. 542, 51 So. 582, 583, 136 Am.St.Rep. 339; Burglass v. Villere, supra.
Because of the numerous above-mentioned procedural steps taken by LeGette in the district court in cause No. 75,320, Tucker was long delayed in his recovery of the executory judgment, a prerequisite for effecting the sale and his purchasing of the mortgage note and the commencement of the instant litigation. One year, three months and ten days were thereby consumed. He was unable to obtain the desired relief sooner, notwithstanding his diligent efforts to do so. Consequently, under the above doctrine there was no running of prescription on the mortgage note during such period, and this action was timely filed.
Defense counsel argue that only an injunction proceeding, enjoining Tucker from exercising his rights on the collateral note, would and could have suspended the accruing prescription. We do not understand this to be the law. Suspension results, as above shown, when prosecution of a right is restrained by any kind of judicial process. LeGette's resistance in the litigation involving the contract of pledge prevented action on the note just as effectively as an injunction would have done. If such an action had been attempted, pending that litigation, undoubtedly an order staying proceedings therein would have been appropriate.
The judgment appears to be correct and it is affirmed.
DREW and TALIAFERRO, JJ., concur. *Page 343