<span style="float:right">14 47<br>45 122</span>

## J. A. BARELLI *v.* J. Y. SZYMANSKI.

The lessee of mortgaged property holds his lease subject to a dissolution by the judicial sale, which may take place to enforce the mortgage.

If after the sale such lessee continues to enjoy the property, he will be bound for the rent to the purchaser, notwithstanding he may have paid his negotiable notes, in the hands of third persons, which were given in consideration of the rent at the time the lease was executed.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *M. M. Cohen*, for plaintiff and appellant. *Semmes & Labat*, for defendant.

LAND, J. On the 11th of January, 1854, *L. A. Pellerin* mortgaged, by notarial ·

BARELLI
v.
SZYMANSKI.

act, to the plaintiff, *J. A. Barelli*, certain lots of ground with the improvements thereon, situate in the city of New Orleans.

On the 22d of March, 1856, the mortgaged property was offered for sale by the Sheriff, in virtue of a writ of seizure and sale issued at the suit of the mortgagee, and adjudicated to him.

In the meantime, on the 10th of April, 1855, *Pellerin*, the mortgagor, leased the mortgaged property to the defendant *Szymanski*, for a term of three years, and in pursuance of the terms of the lease, the lessee executed his promissory notes payable to his own order and by him endorsed, *for the whole rent to become due*, and delivered them to *Pellerin*. This suit is to recover the sum of $1250, the amount of rent that became due for the months of September, October and November, 1856.

The defence is, payment to a *bona fide* holder of the promissory note given to the lessor, for the rent demanded. The want of notice of plaintiff's claim to the rent for which the note was given. The neglect of plaintiff to obtain possession of the note from the lessor, and his knowledge of the existence and contents of the contract of lease at the time of his purchase, and his ratification and adoption of the contract after the Sheriff's sale.

The mortgage granted to the plaintiff was a security for his debt, and gave him the power of having the mortgaged property seized and sold in default of payment, for the satisfaction of his claim. C. C. Art. 3245. The mortgagee expressly obligated himself not to alienate, sell or encumber the property to the prejudice of plaintiff's right of mortgage.

The rights of plaintiff, as mortgagee, were fixed and vested at the date of the execution and registry of the act of mortgage, as well against third persons as the mortgagor. The important right vested in him was the right to cause the mortgaged property to be seized and sold, in default of payment for the satisfaction of his debt, free from any alienation or sale subsequently made, or encumbrance created by the mortgagor on the hypothecated property.

This right thus vested could not be modified or impaired, by any act or contract subsequently entered into between the mortgagor and other parties without the consent of the mortgagee.

The right to sell in default of payment carried with it the correlative right to buy the property free from alienation or encumbrance, and the plaintiff consequently became the purchaser of the mortgaged premises, subject only to the claim of third persons as they existed at the date of the registry of his act of mortgage, and free from all others subsequently acquired.

Mortgagees could be easily deprived of the security of their mortgages, through the agency of contracts of lease of the character of the one made by defendant with *Pellerin*, if such contracts were binding upon them. Long leases with the future rents secured by negotiable paper in the hands of third parties would greatly depreciate the value of mortgaged property at judicial sales, made for the payment of the debts of hypothecary creditors.

The lease was dissolved by the judicial sale to the plaintiff, and he, as purchaser, had his election to make it his own contract with the consent of the lessee, or to repudiate it, and demand immediate possession.

It therefore results, that plaintiff, as owner, was entitled to the fruits and revenues of the property from the date of the sale, and that defendant is liable to him for the rent claimed in this suit, unless plaintiff has done some act by which his right has been lost or forfeited.

The record does not show either a remission or renunciation of the claim for rent on the part of the plaintiff, but, on the contrary, a demand of it from the defendant.

It is true, defendant has paid his note given for the rent to the holder thereof. This obligation he incurred by giving his note for future rent, which might become due, as in this case, to a third party.

That the holder of the note had a right to demand and receive payment of it from defendant is not doubted, but payment of the note was not a payment to the right person of the rent due the plaintiff, as owner of the premises.

Future rents may become due and payable to third persons, and whenever a lessee gives his negotiable notes for the payment of future rents, he incurs the risk, if the property has been previously encumbered, of having to pay the notes to a *bona fide* holder, and also the rents for which they were given, to a third person.

For a payment to be valid it must be made to the creditor, or to some person having power from him to receive it, or authorized by a court or by the law to receive it for him. C. C. Art. 2136.

The defendant, however, insists, that the plaintiff has no greater or other rights than *Pellerin*, the lessee, had, for the reason, that plaintiff adopted and ratified the contract of lease. The evidence does not sanction this position. The plaintiff consented to a continuance of the lease, but demanded payment of the rent to himself, and so informed defendant before the payment of the note to the holder.

It is, therefore, ordered, adjudged and decreed, that the judgment be avoided and reversed, and proceeding to render such judgment as should have been rendered by the lower court, it is ordered, adjudged and decreed, that plaintiff recover of the defendant the sum of twelve hundred and fifty dollars, with five per cent. per annum interest on the same, from the first day of September, 1856, and costs in both courts.