(137 So. 856)

## GULF LUMBER CO. v. BENDER.

### No. 31574.

Nov. 3, 1931.

Lee & Gilmer, of Shreveport, for appellant.

Thompson & Ferguson, of Leesville, and Robert J. O'Neal, of Shreveport, for appellée.

ROGERS, J.

This suit is brought to enforce payment of two promissory notes, made by defendant to the order of plaintiff. The defense is lack of consideration, because the notes, which were obtained by plaintiff through the misrepresentations of its auditor and attorney, were executed to cover the purchase price of certain cast-iron pipe previously sold to defendant and paid for in full. Plaintiff was given judgment, and the defendant appeals.

The issue between the parties is one solely of fact, with the burden of proof resting upon defendant. The trial judge rejected, and we think correctly, the defense urged against plaintiff's demand.

The plaintiff company was engaged in saw-mill operations for a number of years in Vernon parish. Having cut out its timber, it proceeded to dispose of all its property in Fullerton, the mill town.

Plaintiff contends that the notes sued on were executed by defendant in payment of his purchase, through B. Bender, his son and

agent, on November 3, 1928, of a certain lot of cast-iron water pipe. Defendant, on the other hand, contends that the pipe in question was included in a written contract of sale executed on his behalf by B. Bender, his son and agent, on November 6, 1928.

The facts, as disclosed by the record, show that the cast-iron pipe composing the water mains of Fullerton were sold to defendant on November 3, 1928. The agreed purchase price was $18 per ton of 2,000 pounds, f. o. b. cars at Fullerton, with sight draft and bills of lading attached. This sale was evidenced by a memorandum entered in 'a diary kept and used by the superintendent of the plaintiff company for recording daily all sales and transactions made by him, which memorandum was signed on behalf of defendant by B. Bender, his son and agent.

Owing to the disappearance of the diary, plaintiff was unable to produce it on the trial of the case. But, notwithstanding the faint-hearted denial of B. Bender that he did not sign the memorandum contract, its existence and loss, as well as its wording, were amply proved by the testimony of credible witnesses.

On the same day, but subsequent to the sale of the cast-iron water pipe, defendant's son entered into negotiations for the purchase of the remainder of plaintiff's property at Fullerton, defendant, himself, in response to a telephone message, going from Shreveport to Fullerton in order to inspect the property. As a result of these negotiations, defendant purchased the property, with certain exceptions, and a written contract of sale was executed on November 6, 1931, three days after the previous sale had been consummated.

This sale embraced "all of the steel buildings, the concrete buildings, machinery, pipe lines, and other personal property" belonging to the plaintiff at Fullerton and "not already sold by said grantor prior to November 4, 1928 and delivered." Plaintiff, however, reserved from the sale "the house known as the bungalow and its contents, the office vault and its contents, the Nash Sedan automobile, and use of the office supplies and equipment in the keeping and use of A. T. Richardson and G. W. Peabody as long as it was expedient to use the same." The consideration for the sale was $5,500, of which amount $1,000 was paid in cash, and the balance of $4,500 was to be paid in thirty days from the date of the sale.

Defendant argues that because the words "pipe lines" are mentioned, and the words "and delivered" appear in the written contract, that the cast-iron water pipe used in the water system of the town were included in the sale evidenced thereby.

The testimony conclusively shows, however, that the pipe lines embraced in the sale of November 6, 1928, were the small steam and air line pipes connected with the sawmill machinery and sold therewith, and having no connection whatever with the water system of the town.

The testimony also conclusively shows that the words "and delivered" were added in ink, as the contract was about to be executed, at the request of B. Bender, in order that he might be able to collect the purchase price of some property which had been sold but not delivered to the respective purchasers. The particular transactions mentioned by him were the sale for $500 each of two boilers to a resident of Shreveport, and the sale of certain saws and filing equipment for $150 to the Kirby Lumber Company. Both sales had been made by the plaintiff company, but the property had not been delivered, and defendant was given the right to collect the amount of their purchase price.

The superintendent of the plaintiff company estimated, at the time the sale of November 3, 1928, was made, that the cast-iron pipe under the ground amounted to between 250 and 300 tons. When it was dug up and stacked for shipment, it actually amounted to about 300 tons, and was valued at approximately $5,000. It is an incredible story defendant would have the court believe, that plaintiff agreed to include this pipe in the sale of November 6, 1928, the entire consideration of which was $5,500, including $1,200 for machinery and implements sold but not delivered, as well as the other valuable property covered by the second contract.

The contract of November 6, 1928, conveyed the property embraced therein with delivery as it stood. From the moment of the execution of the contract, the defendant became the owner of the property, which was at his risk and expense. But in respect to the cast-iron pipe sold to defendant under date of November 3, 1928, plaintiff's obligation was to make delivery f. o. b. cars Fullerton. This obligation imposed on plaintiff the work and expense of digging the water pipe out of the ground, classifying it under the inspection of one of defendant's employees, and stacking it ready for delivery. The work required approximately two months for its completion. In the meantime, the railroad which ran from Fullerton to Nitram, a station on the Santa Fé railroad had been discontinued and dismantled, and plaintiff, in order to comply with its contract, would have had to haul the pipe a distance of six miles to reach the railroad at Nitram. The plaintiff company, being desirous of closing out its operations by January 1, 1929, caused an invoice to be made of the amount of pipe as to lengths and sizes, which was approved by defendant's representative and taken to Shreveport by the attorney and the auditor of the plaintiff com-

pany for the purpose of reaching an agreement with defendant for the removal of the pipe. This was done by allowing defendant $2 per ton discount from the agreed price of $18 per ton f. o. b. railroad cars, and defendant then executed the notes herein sued on in payment for the pipe at the rate of $16 per ton on the ground where classified and stacked.

For the reasons assigned, the judgment appealed from is affirmed.