## CONTINENTAL BANK & TRUST CO. v. ADAMSON.

### No. 5579.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Rehearing Granted April 29, 1938.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellant.

James H. Dormon, of Monroe, for appellee.

TALIAFERRO, Judge.

Alleging itself to be the holder in due course and for a valuable consideration of two promissory notes of the defendant, for $120 each, dated May 5, 1930, and due May 5th and August 5th, 1933, respectively, plaintiff bank, now in liquidation, brings this suit to recover judgment thereon, with interest and stipulated attorney's fee of ten per cent.

Defendant denies that plaintiff is the bona fide holder of said notes and that they were acquired by it for value before maturity. Specifically, the suit is resisted on the ground that the consideration for which the notes were given has failed. In am-

plification of this defense, defendant alleged that the notes were given to represent the purchase price of certain real estate in the Parish of Orleans, Louisiana; that the holder of said notes has not given him, nor has it tendered a deed to him for said property, and therefore he has received no consideration whatsoever for the notes. He further avers that said notes were delivered to a person whose name he could not recall, whom he is informed and believes was the agent of plaintiff in accepting delivery thereof and in making the agreement for the purchase price of said real estate. In the alternative, he alleges that if the party to whom the notes were delivered was not the agent of plaintiff in the transaction mentioned, plaintiff, through its agents, officers and employees, had actual knowledge of the fact that defendant never received any consideration for said notes.

Plaintiff's demands were rejected and it has appealed.

The notes sued on are drawn to the order of the maker and by him endorsed. They were delivered to one Marcel Gelpi who, in the transaction, represented the Mutual Investment Company, of New Orleans, the owner of the two lots which were to be conveyed to defendant when the notes were paid. No written instrument whatever was signed by the parties to evidence the agreement. Plaintiff does not deny that such an agreement was made and admits that it had knowledge when the notes were acquired by it that they represented the price of the lots involved in the agreement. The notes, along with many others, were purchased by the bank from the Investment Company at par for a total price of nearly six thousand dollars. This occurred on December 30, 1930, long prior to the maturity of either note. Defendant has not demanded a deed to the lots and none has been tendered to him. Two obvious reasons are attributable for this; (1) he has not paid the notes representing the price; and (2) he testified over objection that the agreement was mutually rescinded between him and Gelpi, as agent of the Investment Company. The rescission of the contract is not pleaded as a defense. Defendant was specifically asked to give the date of this latter agreement, but was unable to do so. He did not ask for the return of the notes. Giving his testimony full probative weight in support of a defense not tendered by the answer, it can have no material bearing upon the ultimate result of the case because he was unable to say whether the rescission agreement was reached before or after the bank purchased the notes. The burden was clearly on him to prove with definiteness when this last agreement occurred, because it is essentially a special defense and a plea in avoidance. A. F. Davie v. Stevens, 10 La.Ann. 496; Gulf Lumber Company v. Bender, 173 La. 471, 137 So. 856.

It is not shown nor contended that after having made the agreement with defendant, Gelpi had any authority whatever to rescind it. Certainly he was without such power after the notes had been sold to the bank.

The testimony does not definitely disclose the fact, but we assume that the Mutual Investment Company was a holding company of the plaintiff bank. Mr. James J. A. Fortier was the president of each when the notes were acquired by the bank. The bank's assistant auditor was bookkeeper for the Investment Company. There is no contention, however, that the two corporations are not separate and distinct legal entities. Transactions involving the transfer of notes was rather common between them. In view of the undisputed testimony in the case, we shall have to deal with it on the basis that the bank acquired the notes before their maturity and without knowledge of the belated asserted rescission of the agreement testified to by defendant, granting that the agreement was actually made. This being true, plaintiff must be adjudged a bona fide holder in due course and for a valuable consideration.

Section 52 of Act 64 of 1904 (Negotiable Instruments Law) reads:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in

the instrument or defect in the title of the person negotiating it."

Plaintiff's status as owner meets all of these necessary prerequisites to holding in due course. When it acquired the notes, there was a definite outstanding agreement on the part of the Investment Company to make deed to defendant to the lots when the notes were paid by him. The notes themselves unequivocally proclaim defendant's obligation to pay the price of the lots evidenced by the notes. Until he has done this, he has no standing to demand a deed, and when he has done this, he will be unquestionably entitled to a deed.

■ The defense of failure of consideration falls before the established facts of the case.

■ The fact that the agreement for the sale and purchase of the lots was executory in character, to the knowledge of the bank, does not militate against enforcement of the notes in the hands of a holder in due course. The converse of this rule prevails when the contract for which the consideration is given has been breached to the knowledge of the endorsee prior to acquiring the notes representing the consideration. This principle is expressly enunciated in the early case of Fusilier v. Bonin et al., 12 Mart., O.S., 235. It has been adhered to by an unbroken line of decisions to the present day.

The court in Tyler v. Whitney-Central Trust & Savings Bank, 157 La. 249, 256, 102 So. 325, 327, employed this language in discussing the well recognized rule prevailing in such a case:

"And the rule applicable to the indorsee of a negotiable instrument, for value, before maturity, with respect to knowledge acquired outside of the instrument, at or before the time of its acquisition, that the consideration thereof is executory, is pertinent here. In such an instance it is held that mere knowledge that the consideration is executory does not make the indorsee a holder not in due course. Thus, in Daniel on Negotiable Instruments (4th Ed.) § 790, it is said:

" 'Nor is it a good ground of defense against a bona fide holder for value that he was informed that the note was made or the bill accepted in consideration of an executory contract, unless he was also informed of its breach.' "

This rule appears to have judicial sanction generally. Concerning it, Ruling Case Law, Vol. 3, par. 272, Verbo Bills and Notes, says: "The courts universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee, which has not been performed, will not deprive the endorsee of the character of a holder in due course, unless he also has notice of the breach of that agreement or contract. So knowledge of a warranty on a sale in which a note was given is held not to affect the rights of a purchaser of the note for value before maturity, if he had no knowledge of the breach of the warranty."

The following Louisiana cases abundantly prove the rule: Maurin v. Chambers, 6 Rob. 62; Sadler v. White, 14 La.Ann. 177; Barelli v. Szymanski, 14 La.Ann. 47; State National Bank v. Cason, 39 La.Ann. 865, 2 So. 881; A. Marx & Sons v. Frey, 137 La. 948, 69 So. 757; Continental Bank & Trust Co. v. Times Publishing Company, 142 La. 209, 76 So. 612, L.R.A.1918B, 632.

In Martel v. Lafayette Sugar Refining Company, 153 La. 248, 95 So. 706, it was said and held: "Though transferee of note given for sugar filters knew of seller's guaranty of the filters, proof that the filters did not thereafter fulfill the guaranty was not admissible, there having been no failure of consideration prior to the transfer."

Plaintiff's predicament may be unfortunate. It is highly probable that since the bank has failed, the Investment Company's warranty to him is worth little or nothing. In executing and delivering the notes in the manner herein related, he did so with full knowledge that they could be acquired by a third person and enforced against him. If not negotiated when the second agreement was had with Gelpi, he should then have demanded their return. The following excerpt from Fusilier v. Bonin, supra, is apropos of this discussion: "It is true, the purchaser of a tract of land, who has given a negotiable note to secure the payment of its price, may resist the claim of his vendor, if he have been, in the meanwhile, evicted. But the very circumstance of his giving such a note, is evidence of his consent to forego this right, if the note be fairly endorsed away before maturity."

For the reasons herein assigned, the judgment appealed from is reversed, an-

nulled and set aside; and there is now judgment for plaintiff, Continental Bank & Trust Company in Liquidation, and against the defendant, Eric W. Adamson, for the sum of two hundred forty and no/100 ($240.00) dollars, with six per cent per annum interest from May 5, 1930, until paid, plus ten per cent of said amounts, principal and interest, as attorney's fee; and costs.

## On Application for Rehearing

### PER CURIAM.

The sole issue tendered in this case is the failure of consideration of the notes sued on and that plaintiff, through its agents and officers, was aware of such failure when the notes were acquired by it. Rescission of the contract for which the notes were executed and delivered by defendant, was not alleged upon in the answer and, therefore, primarily was not tendered as an issue. It was first injected into the case by the testimony of defendant on trial, who was wholly unable to· fix the date thereof. We held that timely objection was made to the admissibility of testimony on this point. Defendant's counsel argues that the general objection to admissibility of testimony to alter, change or affect the integrity of the notes, as reflected from their face, was not sufficiently broad to include testimony touching the alleged rescission, and that having been admitted without objection, the pleadings were thereby enlarged. He further argues that since a prima facie case of rescission was made out by defendant's testimony, that the burden then devolved upon plaintiff to overcome the prima facie case, but did not do so. We here add that as the issue of rescission was not raised by the pleadings, plaintiff was not called upon to meet it on trial, and was no doubt then not in a position to do so before trial closed.

In view of the situation thus presented, and out of a desire that the ends of justice be completely served, we have decided to grant a rehearing herein, and to remand the case for the purpose of allowing the pleadings to be amended on the question of the asserted rescission, and of admitting testimony bearing upon that issue, and the date of the rescission.

A rehearing, accordingly, is granted and the case is hereby remanded to the lower court for the above stated purposes.