## SHADDOCK v. HAWKINS.

### No. 5867.

Court of Appeal of Louisiana. Second Circuit.

June 28, 1939.

Hoye Grafton, of Shreveport, for appellant.

Albert E. Bryson, of Shreveport, for appellee.

HAMITER, Judge.

Two promissory notes of defendant L. A. Hawkins, dated January 3, 1938, and payable to the order of and owned by plaintiff, Robert L. Shaddock, form the basis of this action. One is for $150 and due on demand, while the other recites an obligation of $100 maturing February 15, 1938. No conventional interest is provided for in either, and consequently the amounts bear the legal rate of five per cent per annum from their respective maturities. Attorney's fees of ten per cent of the sums to be collected are stipulated. Plaintiff asks judgment against defendant for $250, together with interest and attorney's fees.

Defendant admits the signing of the instruments, but denies liability thereunder. His defense, according to the averments of the answer, is that, "said notes were secured from him by the plaintiff, through misrepresentation, in the following manner:

"That on or about December 10, 1937, the plaintiff represented to defendant that he could secure for defendant a five year oil and gas mineral lease on certain ten acres in N.E.¼ of Section ten, Township twenty, Range fifteen, Caddo Parish, Louisiana, with the obligation on defendant to drill a well thereon within sixty days, and defendant agreed to pay the plaintiff Two Hundred Fifty and No/100 ($250.00) Dollars for broker's commission on said lease.

"That on December 20th, 1937, the plaintiff did secure a lease, but contrary to defendant's agreement, the said lease provided for a term of only one year.

"That this was a material difference to defendant, and he would not have given said notes to plaintiff had plantiff not represented to him that the lease had been secured according to defendant's requirements.

"Moreover the defendant shows that he was not familiar with the topography of said ten acres, and during the negotiations of this lease he was ill and could not visit it.

"That the plaintiff had full knowledge of the condition of this land and well. knew that it was under water and it would be impossible for any one to drill a well thereon within said sixty days.

"That defendant shows that he was fraudulently led to believe that he could perform said contract, whereas it was impossible as plaintiff well knew."

The demands of plaintiff were rejected by the district court and he appealed.

It is well settled in the jurisprudence of this state that the maker of a note, when sued on the obligation, has the burden of proving the defense of want of consideration (Gulf Lumber Co. v. Bender, 173 La. 471, 137 So. 856; Columbia Restaurant v. Sadnovick, La.App., 157 So. 280, Daniel v. Hernandez, La.App., 173 So. 482), and also the defense that he was fraudulently induced to execute it. Palmer v. Mann, 11 La.App. 439, 123 So. 456. "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Section 24 of Act 64 of 1904.

The record discloses that on or about December 10, 1937, plaintiff, an independent

broker, agreed to seek for defendant an oil and gas lease on a certain ten acres of land in Caddo Parish, Louisiana, the consideration of the lease to be defendant's obligation to commence the actual drilling of a well on the property within sixty days and to prosecute the drilling operations with reasonable diligence to a depth of 2,300 feet, unless oil or gas in paying quantities was found at a lesser depth. If successful in obtaining the desired contract, plaintiff's compensation would be $250. He succeeded in his endeavors and on December 20, 1937, delivered to defendant the necessary instrument bearing the signatures of all owners of the ten-acre tract. Some time thereafter defendant executed the notes above described and gave them to plaintiff for the services rendered. Presumably this occurred on January 3, 1938, for such notes bear that date and it is not shown that they were post dated. The lease contract has been in defendant's possession continuously since its delivery to him.

Defendant testifies that the agreement with plaintiff provided for the obtaining of an oil and gas lease having a term of five years; that he was ill at his home when the instrument was given to him and did not read it at the time; that several days later, and after the notes were made and delivered, he discovered that the stipulated term was for only one year; and that on making this discovery he contacted plaintiff and told him that the lease would not be accepted. No other witness was offered in defendant's behalf to substantiate the claimed agreement for a five-year term.

It is the testimony of plaintiff that he did not agree to secure a contract containing a five-year term. He states that after explanation was made to defendant relative to the unimportance of such a term because of the sixty-day drilling clause, the latter accepted the instrument and later gave the notes therefor.

At least two circumstances are related by defendant which tend to support plaintiff's contention that there was a complete acceptance of the lease contract as written. Defendant testifies that he and plaintiff made a trip to the locality in which the land was situated "when I was making preparations to go in and drill the property". Why was he preparing to commence drilling if the lease had been rejected? It is his further testimony that some time

in January he asked plantiff, both of whom were then in El Dorado, Arkansas, to obtain for him an extension on the sixty-day drilling clause. This prompts the query, If the lease was not acceptable, why was the extension desired?

Defendant says that plaintiff gave assurance when the lease was delivered that the affected land was dry and operations could be carried on there at any time; and he later ascertained that the land was inundated, rendering drilling thereof impossible. This testimony is corroborated only to the extent that much water covered the property at the time. The water condition is attested by Mr. Victor Wenzel, an oil operator. The latter states, however, that the presence of water does not prevent drilling, but makes it very expensive.

Emphatic denial is voiced by plaintiff of having misrepresented the character of land. He states that no discussion was had regarding the surface condition until the day that he and defendant made the trip to its vicinity. Because of rain the ground was muddy, and the particular tract was not visited. They were within 2,000 feet of it, however, and a general observation of land in that locality was had. According to plaintiff, this trip occurred before the notes were given. He recalls his leaving for Arkansas immediately after receiving them and working there for a considerable period of time. Defendant states that the discussed trip took place after delivery of the notes.

Phraseology employed by us in the opinion of the case of Palmer v. Mann, supra, appears to be applicable here. Therein we said [11 La.App. 439, 123 So. 457]: "The evidence does not establish the fraud or misrepresentation alleged by defendant. On these issues defendant swears positively one way and plaintiff swears equally positively the other. Defendant's testimony is set off by that of plaintiff, and the burden being on defendant to establish the facts alleged by a preponderance of the evidence and the burden not being discharged by him, the charges of fraud and misrepresentation fall."

The evidence in the record before us does not preponderate in favor of the special defense of misrepresentation and want of consideration. The uncorroborated testimony of defendant touching the important questions is flatly contradicted by that of plaintiff, and the above specifically

referred to circumstances weigh against him. The burden which he carries has not been discharged.

Accordingly, the judgment of the district court is reversed and set aside, and there is now judgment in favor of plaintiff, Robert L. Shaddock, and against the defendant, L. A. Hawkins, in the full sum of $250, with five per cent per annum interest on $150, from January 3, 1938, until paid, and like interest on $100 from February 15, 1938, until paid, together with ten per cent additional on said principal amounts and interest as attorney's fees. It is further ordered that defendant pay all costs of both courts.