This is a suit in which plaintiff seeks the recovery of a total principal sum of $1,969.12 made up of a number of claims, as will be more particularly set forth in this opinion. After trial judgment was rendered in favor of plaintiff in the sum of $172.84, without interest, upon one of the the items comprehended in the demands of plaintiff, and its demands otherwise were rejected, from which judgment plaintiff has appealed.
The parties to this suit are Interstate Electric Company of New Orleans as plaintiff, and Interstate Electric Company of Shreveport, Inc., as defendant, which parties will be hereinafter referred to in this opinion as the New Orleans Company and the Shreveport Company respectively.
The original petition in this suit was filed on September 19, 1936. Plaintiff's action was subsequently dismissed by the District Court for failure to comply with certain orders, but, on appeal to this court, was remanded. It now comes before us, for the second time, on appeal from a definite judgment on both the merits and on certain exceptions filed on behalf of the party defendant.
Some of the items originally claimed by plaintiff have passed out of consideration for various reasons which it is not necessary to detail here, and the issues presented for determination on this appeal are now made up of three separate and distinct claims with which we shall deal, seriatim.
As a background for an understanding of the origin of the claims sued upon it is desirable to set forth a brief history of the parties plaintiff and defendant which bear identical names, with the exception of the designation of the domicile of the Shreveport Company. There has never been any corporate relationship between the parties. Upon organization of the Interstate Electric Company of Shreveport the majority of the stock therein was subscribed by Percival Stern and members of his family. Stern became President of the Shreveport corporation and conducted its affairs for a period of years, being, during the same period, the President of the New Orleans Company. In or about the years 1930-31 the financial condition of the Shreveport Company deteriorated, because of general economic conditions, to such point that the first National Bank of Shreveport, which carried substantial loans of the corporation, felt required to select and install, in active management of the affairs of the company, one of its representatives as an alternative to foreclosing its loans, which would have been disastrous insofar as the continuance of business of the corporation was concerned. The individual selected to act in this capacity was Mr. E.R. Bernstein, who managed the affairs of the Shreveport Company until his death in May, 1932, at which time he was succeeded by Mr. R.A. Querbes, who served in the same capacity until some time during the spring of 1935 when the majority of the stock of the corporation was acquired by him and his brothers, and Mr. Stern's connection with the company ceased.
A short time after the change in the stock ownership of the Shreveport Company *Page 781 
had taken place, a statement of the accounts between the New Orleans and the Shreveport Companies was prepared and forwarded by the Shreveport Company in accordance with the showing on its books, which statement disclosed a balance of $221.21 in favor of the New Orleans Company. After receipt of the statement the New Orleans Company protested the correctness thereof and countered with a statement of its own showing a balance in its favor in excess of $2,000. The disagreement as to the accounts existing between the two companies led to the institution of this action.
However, during the course of the negotiations, subsequent to the rendering of a statement by the Shreveport Company in 1935, the balance of $221.22 was further reduced by certain items resulting from intercompany transactions, as shown on the books of the Shreveport Company, and in November, 1935, the Shreveport Company transmitted its check in the sum of $172.84 to the New Orleans Company as payment in full of the indebtedness admittedly due by the Shreveport Company. This check was returned.
The first of plaintiff's demands embraced in this suit seeks the recovery of the sum of $221.22 on the basis of the statement of the Shreveport Company, as rendered in April, 1935, which plaintiff alleged to be an account stated, and admitted to be due on numerous occasions by the defendant. On this item there was judgment below in favor of plaintiff and against the defendant in the sum of $172.84, without interest, on the ground that tender of this sum has been made to and refused by the plaintiff corporation.
The increase of judgment on this item is sought by plaintiff-appellant on the ground that defendant's first statement fixed the amount due at $221.22, which thereupon became an amount stated, which defendant could not later be heard to deny.
[1-3] We do not think this contention is meritorious inasmuch as the law contemplates that an account stated shall take into consideration all matters of credits and debits as between the parties. We know of no reason why an account as between debtor and creditor, rendered upon a given date, should not be subject to subsequently accruing debits or credits requiring a restatement of the account at a later date. Such seems to have been the case in this instance, and our examination of the voluminous record before us fails to disclose any evidence rebutting the correctness of this item as reflected by the books of account of the defendant, Shreveport Company. It is therefore our opinion that the judgment of the lower Court relating to this item was correct to the extent of allowing recovery for the sum of $172.84 without interest, in consideration of the fact that payment had been offered and refused, thus obviating the necessity for a formal legal tender of the amount.
Proceeding to the basis of plaintiff's claim on what we designate as its second demand, we find that the account is set forth in detail in an exhibit attached to plaintiff's second supplemental and amended petition. This claim totals the sum of $676 and represents items alleged to have been paid by the New Orleans Company as dues, to certain specified trade organizations, over a period of time extending from October of 1932 through May of 1934.
Defendant interposed a plea of prescription of three years as against plaintiff's right to recover on this claim. The lower Court in its judgment sustained the plea of prescription as to all sums comprehended by the dues covering a period of more than three years prior to December 31, 1936, which was the date of filing of plaintiff's first supplemental and amended petition in which this item was first claimed to be due. The judgment further rejected on the merits the claims for all other dues included in this demand.
In addition to the plea of prescription, which was asserted by defendant with respect to this demand, the evidence offered by plaintiff in support thereof was additionally objected to on two grounds, first, that the books of merchants cannot be admitted in evidence in their favor; and, second, that the testimony tendered was not the best evidence as to the facts in question. This objection was first sustained by our learned brother of the District Court, but was subsequently modified to *Page 782 
permit the introduction of the evidence and testimony subject to defendant's objection.
Before proceeding to any discussion on the merits of this demand, it is necessary that we pass upon the plea of prescription and the objection to the admission of evidence as above set forth.
Defendant's plea of prescription, which is based upon the provisions of Article 3538 of the Civil Code, fixing the application of the prescription of three years to actions for money due on accounts, is opposed by plaintiff on the ground that Article 3538 does not apply, but that the demands of plaintiff as to this particular claim are governed by the provisions of Article 3544 of the Civil Code, which fixes the prescription of personal actions at 10 years.
[4] We find ourselves unable to subscribe to plaintiff's theory on this particular point. The litigated matters before us concern, without exception, the determination of the merits of accounts existing between plaintiff and defendant companies. To our minds it is unnecessary to attempt to go behind the very plain wording of Article 3538 which fixes the prescription of three years, in addition to particularized matters, as operating "on all other accounts". For this reason, we are of the opinion that the ruling of the lower Court and the judgment in accordance therewith sustaining the plea of prescription on all charges for dues covering a period of more than three years prior to December 31, 1936, was eminently correct.
[5] In passing upon the ruling of the lower Court as to the introduction of evidence in support of plaintiff's claims on this demand, an analysis of the character of evidence by which plaintiff offered to support its claims discloses a number of significant facts. In the first place, there is no showing that the payment of the dues claimed in the several trade organizations, which payment was allegedly made by the New Orleans Company for the benefit of itself and the Shreveport Company, was ever authorized or approved by the actual manager of the Shreveport Company, after Mr. Stern was superseded, in the direction of the affairs of said Company, notwithstanding the fact that he remained its titular head. Nor is there any showing that any effort was made to collect the amounts represented by this payment of dues until after a complete severance of interest by reason of the sale of the stock owned by stockholders of the New Orleans Company. It was further shown that the dues were apportioned as between the New Orleans and the Shreveport Companies entirely upon an arbitrary basis established by the New Orleans Company. As a matter of fact, considering all the evidence tendered, it was not satisfactorily shown that the Shreveport Company was ever recognized as a member, nor that it ever participated as a member in any of these organizations. It appears that the principal virtue of the membership was to permit members to obtain certain rebates and allowances on the purchase of materials and supplies. In order to obtain a more favorable rating it was the policy of the New Orleans Company to add to its own statement as to the amount of its business the amount which was transacted by the Shreveport Company. In this way it would appear that the New Orleans Company received a more favorable rating. It is contended on the part of plaintiff that the Shreveport Company derived substantial benefits from its participation. However this may be, we are impressed with the fact that the memberships in the several organizations were held by the New Orleans Company. We fail to find any evidence of recognition of the Shreveport Company by these associations as an active member.
[6] The character of the evidence which was tendered by plaintiff in support of this demand was made up of the testimony of its President, Stern, and its head bookkeeper, Breaud. The predicate for the introduction of secondary evidence on this point was attempted to be laid by the showing that plaintiff, in the regular course of business, periodically destroyed its vouchers, cancelled checks and other records. But the significant fact was developed that the records bearing upon these particular items apparently were destroyed after the filing of this suit, and certainly after the dispute with reference to the repayment *Page 783 
of these amounts became an issue between the parties.
The doubt cast upon plaintiff's explanation, and the acceptance thereof as a foundation for the introduction of secondary evidence, is further emphasized by the fact that other checks and vouchers bearing upon matters involved in this litigation, older in point of time, were produced and introduced in evidence. This circumstance clearly indicates that plaintiffs failed in their attempt to show such an enduring custom of periodic destruction of records as would justify the acceptance of secondary evidence.
[7] However, pretermitting any discussion on the point as to whether the destruction of this evidence after filing of suit should be considered simply as a suspicious circumstance and not as one that eliminated a consideration of secondary evidence, we are further impressed by the fact that no effort appeared to have been made to substantiate or corroborate plaintiff's contentions through production of evidence or testimony from these various organizations themselves by way of establishing the membership of the Shreveport Company therein.
[8] It is a general rule of evidence that where the best evidence is not available and the use of secondary evidence is therefore permissible, it should be shown that such is the best that can be produced.
[9] It is contended on behalf of plaintiff that certain communications from officials of the Shreveport Company, which are in the record, constitute acceptance of existing memberships in the trade organizations specified. After careful examination of the evidence in the record on this point, we do not so conclude. The inferences which might be attached to certain statements in the communications referred to would be purely speculative, since they are without any of those characteristics of certainty which would form a proper foundation for a firm, consistent and enduring interpretation in the light contended for on behalf of plaintiff.
After careful consideration of the objections made on behalf of defendant to the character of the evidence which was tendered in support of plaintiff's claims on this demand, we are of the opinion that the first ruling of the District Court in excluding the evidence was correct and should have been maintained. We have no doubt that the Judge of the District Court took all of these matters into consideration, notwithstanding the modification of his ruling.
[10] In view of our opinion to the effect that the character of evidence offered by plaintiff in support of this demand should properly have been excluded, it perforce follows that plaintiff has failed to prove the items which were the basis for this claim, and, accordingly, the claim was properly rejected.
[11] The third and final demand included in plaintiff's action is based upon the alleged right to the recovery from the defendant company of a loss claimed to have been sustained by plaintiff in a transaction involving the discounting of notes owned by the St. John Electric Company of Monroe.
The St. John Electric Company of Monroe was a customer of the defendant, Shreveport Company, from which it purchased certain articles of merchandise. Sometime about 1930 the affairs of the St. John Electric Company became seriously involved at a time when it was substantially indebted to the Shreveport Company, and, as an alternative to bankruptcy, the St. John Electric Company offered to turn over a number of chattel mortgage notes which it held against its customers on the purchase of radios and other articles. The Shreveport Company was unwilling to undertake to handle these chattel mortgage notes and it appears that Mr. Stern, who, as must be borne in mind, was then President of both the New Orleans and Shreveport Companies, undertook to handle these notes of the customers of the St. John Company.
The plaintiff, New Orleans Company, contends, in this action, that these notes were discounted and the proceeds thereof were used for the payment of the indebtedness of the St. John Company to the defendant, Shreveport Company. Plaintiff sustained an eventual loss of $553.35 on *Page 784 
this transaction, for which it seeks to recover from defendant, Shreveport Company, in this action.
The testimony on this point is very involved and the facts are somewhat obscure. We strongly incline to the belief that the difficulties and consequent disagreements between the parties to this suit, which arose from this particular transaction, are traceable to the fact that Stern, President of both companies, apparently interested himself in this matter and undertook to work it out without any definite understanding with the defendant, Shreveport Company. Counsel for plaintiff zealously contends on behalf of his client that the New Orleans Company had no interest in this St. John matter and that Stern's activities were dedicated entirely to the benefit of the Shreveport Company. We have no doubt as to the truth of this contention but from a legal standpoint we are concerned, not with Stern's interest and sincere desire to assist the Shreveport Company, but purely and simply with the legal liability, if any, which has attached by reason of his negotiations. It is asserted that, at the time the arrangement was made, the Shreveport Company guaranteed the New Orleans Company against any loss arising as the result of this transaction. We do not find that this has been satisfactorily established. It appears that proceeds derived from the negotiations of the chattel mortgage notes were remitted by the New Orleans Company to both the St. John Company and to the defendant, Shreveport Company. It is not shown that the defendant, Shreveport Company, received all of the proceeds of these notes, and, in fact, the contrary appears to have been established. Nor is it shown that the St. John Company remitted to the Shreveport Company all of the amounts it received from the New Orleans Company resulting from this negotiation. However this may be, we do not find ground to sustain the conclusion that the Shreveport Company guaranteed the New Orleans Company against loss with respect to this transaction. We are strongly persuaded that Mr. Stern, having the natural interest of the Shreveport Company at heart by reason of his connection therewith, undertook to use the resources of the New Orleans Company in order to help a good customer, and at the same time protect the Shreveport Company. However, since this action was taken without the precaution of procuring any written endorsement or guaranty, and, inasmuch as plaintiff has failed to establish by any other preponderating evidence that the Shreveport Company bound itself to protect the New Orleans Company against loss in the handling of these notes, we can only conclude that there was no liability on the part of the defendant, Shreveport Company. The mere fact that Stern occupied the position of President of both the companies involved is not of itself sufficient to justify the assumption that he could warrant one company against loss in any transaction in which the other company participated, to the extent of receiving indirect benefits but in which it was not directly involved.
An exception of no cause of action was filed on behalf of defendant, Shreveport Company, based upon the proposition that parole evidence is not admissible to prove a promise to pay the debt of a third person. The trial Court made no ruling on this exception it is re-urged by counsel for defendant, Shreveport Company, before this Court. Inasmuch as our finding on the merits, which has been above set forth, disposes of the issue, we deem it unnecessary to discuss the point presented in the exception.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost.
KENNON, J., absent.
 *Page 60