GULOTTA, Judge.
This is a suit on a promissory note. From an adverse judgment plaintiff brings this appeal.
Plaintiff, Mrs. Nelda Harrison, also known as Mrs. Brenza, was the divorced wife of Stanley W. Alexander, for whom subsequently her Succession was substituted as plaintiff through the testamentary executor of her estate, Eben Hardie, Jr. *189 Defendant, Roy F. Occhipinti, is the maker of a promissory note dated November 7, 1967, and made payable to “Mrs. Nelda Brenza” in the sum of $40,000 which was due in one installment payable on November 7, 1968. Defendant admits making out the note, signing it and giving it to plaintiff; however, he denies having received any consideration for the note.
The trial judge having decided in favor of defendant and having dismissed the suit, we must determine whether the trial judge committed manifest error and whether there was in fact consideration for the note.
The testimony of Mr. Occhipinti is by necessity the most reliable explanation of the events which led to the making of this note as plaintiff is now deceased having been murdered in her Gulf Coast home on March 12, 1969. Defendant’s account is that prior to the alleged transaction, Mrs. Brenza and defendant had been both social and business acquaintances. Mrs. Brenza was having marital difficulties with her then husband, Stanley W. Alexander, and was having difficulty in dissolving the “community” as well as partitioning the property.
Plaintiff attempted to show the decedent’s reference to community property is a contradiction in defendant’s testimony in that the decedent could not have referred to community property since Mississippi does not recognize this concept in law.
Defendant contends that Mrs. Brenza placed a long distance call to him from her residence in Pass Christian, Mississippi, informing him that she was coming to New Orleans to discuss her marital difficulties with him concerning the “community” property between her and her former husband, Stanley W. Alexander. Mrs. Brenza came to defendant’s office at the Desta Company in November of 1967.
Defendant relates that upon her arrival at his office Mrs. Brenza informed the defendant that she thought she could “buy her husband” out for $40,000 cash and that she preferred not to withdraw the money from any account. Occhipinti further stated that plaintiff’s idea, rather, was to give the impression that the community had loaned $40,000 to the defendant who had in return executed a promissory note for that amount. Through this method, in the event the deal with her husband was unsuccessful, it would appear that it was a loan from the community. That portion of the alleged scheme which relates directly to the issue at bar, according to defendant, is that although the defendant was not to receive the $40,000, he was to execute a promissory note in that sum payable to plaintiff which was to be marked paid by plaintiff and returned to the defendant.
Defendant’s account of their conversation and activities was attested to in part by one of defendant’s employees, Leo J. Miceli, who heard what transpired through an open door of the small anteroom which connects with the larger room where plaintiff and defendant were engaged in discussion. Mr. Miceli’s recollection of what transpired is as follows:
“And she [plaintiff] had said that— asked Roy if he could help her out. And then, she went on to say that she wanted to get some money or something and would he sign a note to show that she, what she had done with this money. And then after she had showed this note, she was going to mark it paid and return it to him, but he was not to receive any money or anything like that. Just to sign this to help her out. A few other things were said and she started crying again. That’s when the door was closed.”
Defendant further testified that in order for plaintiff to have $40,000 made available to her through the bank, she had that sum removed from her stock fund and then deposited in her bank account. We note that on November 6, 1967, a $50,000 deposit was recorded on the original ledger *190 sheet of the bank for the account of Nelda Brenza.
Defendant asserts that prior to these events and during this subject transaction, plaintiff and defendant were on amicable terms and that even subsequently, plaintiff had offered to either buy into defendant’s business or to lend the sum of $250,000 to go into a jewelry business with defendant.
The record reveals that defendant accompanied plaintiff from his office to the Hibernia National Bank in New Orleans on November 7, 1967. The deposition of John J. Deutschmann, Jr., a friend and business acquaintance of defendant, indicates that while joining the others for lunch, he walked with them to the bank and waited outside for Mr. Occhipinti and Mrs. Brenza who subsequently came out together after which the three proceeded to lunch.
The testimony of Gervis Wyble, assistant cashier at the Hibernia National Bank of New Orleans in November of 1967, substantiates Mr. Occhipinti’s suggestion that the large deposit into Mrs. Brenza’s account the previous day had been a transfer from her stock fund. Mr. Wyble referred to a deposit Hibernia Bank received in the form of a check from Whitney Bank from Merrill Lynch, Mrs. Brenza’s broker. Mr. Wyble stated he had another officer of the bank, Charles Longmire, accompany him as a witness in turning over the $40,000 cash to the plaintiff and defendant. Plaintiff cashed her personal check for the $40,000 after approval had been given by Mr. Wyble. Wyble further testified that after the money was released by the bank, since Mr. Wyble wished it counted and Mrs. Brenza chose not to do so, Mr. Occhipinti took the money, counted it, and placed it in a briefcase which he carried out of the bank.
It is necessary to elicit from the record whether the $40,000 cash was ever actually transferred to defendant as owner thereof with absolute control. Proof of such transfer would be uncontrovertible evidence that the note was executed for valuable consideration.
The record reveals that Mr. Occhipinti carried the briefcase containing the $40,000 from the bank to Delmonico’s Restaurant and then to Crescent City Motors on St. Charles Avenue where Mrs. Brenza purchased a Mercedes-Benz automobile from Oliver Cinnater, owner of Crescent City Motors. Mr. Cinnater was unable to remember who accompanied Mrs. Brenza and could not identify defendant. He did testify that a man was with her.
According to defendant and Mr. Deutsch-mann, after the purchase and while Mrs. Brenza was in her automobile, Mr. Oc-chipinti handed the briefcase to her which she placed on the seat of the car. Mrs. Brenza then left the automobile agency alone presumably to return to her home in Mississippi. The record is absent any other explanation of what happened to the briefcase carrying $40,000 save that Mrs. Brenza was the last party to be seen with it driving in her newly acquired automobile. We are by circumstances forced to rely on the testimony of Mr. Occhipinti, as well as the testimony of Mr. Deutschmann. Mr. Cinnater, who sold the automobile to plaintiff, could not recall any conversation between Mrs. Brenza, Occhipinti, and Deutschmann, having testified that he remembered only one person accompanying Mrs. Brenza to the automobile agency.
It is a cardinal rule that the law presumes consideration was given for a promissory note. LSA-R.S. 7:24 reads :
“Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.”
Defendant contends that because the $40,000 was never transferred to him, plaintiff was not a holder in due course, and, hence urges that a defense of want or lack of consideration for the execution of the note is available to him. The availabil *191 ity of such defenses to a suit on a negotiable instrument as between the maker and the payee is recognized and well settled in the jurisprudence of this State. Service Parts Company v. Culpepper, 142 So.2d 498 (La.App.2d Cir. 1962); Shaddock v. Hawkins, 190 So. 843 (La.App.2d Cir. 1939); Belknap Hardware & Mfg. Co. v. Hearn, 179 La. 909, 155 So. 396 (1934); Maison Blanche Co. v. Putfark, 9 La.App. 567, 119 So. 289 (1928).
The presumption in the law of consideration may thus be overcome by defendant’s introduction of evidence casting suspicion upon the reality of the consideration. The court in Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257 (1956) explained the nature of this rebuttable presumption :
“Under the Negotiable Instruments Law of this state and the jurisprudence of this court, every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. R.S. 7:24; Moss v. Robinson, 216 La. 295, 43 So.2d 613, and cases there cited. For this reason, a plaintiff suing on a negotiable instrument is not required to produce any proof of consideration when he introduces the instrument into evidence, and this remains true in spite of the fact that the defendant in his answer may have alleged lack of consideration. Absence or failure of consideration is a matter of defense as against any person not a holder in due course, and partial failure of consideration is a defense pro tanto. R.S. 7:28. The burden is thus on the defendant of going forward with the evidence and rebutting the prima facie case in favor of plaintiff. However, if during the trial of the case the defendant offers evidence which casts doubt upon the reality or the amount of the consideration, the presumption that the note was given for value is rebutted, and the burden shifts to the plaintiff to prove consideration by a preponderance of the evidence. Moss v. Robinson, supra.” (Emphasis added.) Bernard Brothers v. Dugas, supra, 85 So.2d at 258.
See also: Home Finance Service of Lafayette Parish v. Black, 131 So.2d 547 (La.App.3rd Cir. 1961) ; Eskew v. Walker, 127 So.2d 210 (La.App.3rd Cir. 1961); Trailer Enterprises, Inc. v. Eikenbary, 122 So.2d 655 (La.App.1st Cir. 1960); Moore Steel, Inc. v. Clear Lite Window Co., 178 So.2d 376 (La.App.4th Cir. 1965); Cooper v. Succession of Cooper, 234 La. 832, 101 So.2d 686 (1958).
The jurisprudence in this area is therefore applicable to the case at bar. Plaintiff has introduced the promissory note for $40,000 signed by defendant as prima facie evidence of consideration. The testimony of defendant and Leo Miceli has cast doubt on the reality of the consideration. A photocopy of a copy containing a portion of a letter concerning the note allegedly written by Mrs. Brenza to defendant in her own hand was introduced in evidence at the trial and admitted by the trial judge. This evidence in the record compounds the suspicion cast by the testimony and if properly admitted, the combination of the contents of this letter coupled with the testimony regarding the circumstances surrounding the issuance of the note succeeds in raising a substantial doubt as to the reality of the consideration.
However, there is some question as to whether the trial judge erred in admitting the copy of a copy of a portion of a letter and further whether the trial judge erred in admitting parol evidence concerning the circumstances and content of the letter.
The settled rule is that parol evidence is admissible to prove the special defenses of failure of consideration, between the original parties to a promissory note or one who is not a holder for value and in due course. Lyons v. Goodman, 78 So.2d 424 (La.App.1st Cir. 1955); Sterling v. McKendrick, 134 So.2d 655 (La.App.4th Cir. 1961).
*192 The original letter was allegedly written to defendant while Mrs. Brenza was seated in his office. Mr. Occhipinti described the events as follows :
“Q. When did you give Mrs. Brenza the note, Mr. Occhipinti ?
“A. I don’t recall the exact moment I gave her the note. I’m trying to recall if it was before we went to the bank, but I think it was before we went to the bank, if I recall correctly.
“Q. So, you did it in your office before going to the bank ?
“A. I think that’s what it was. Yes. At that time, she sat down in my office and she wrote a letter while she was in tears and everything, she wrote a letter. I saw her writing something; I didn’t realize at the time what she was writing, but she wrote me a long letter while sitting in my office. I think she was waiting for her stockbroker to call or something. She wrote a nice long letter to me and in the letter, she told me that she couldn’t explain this forty thousand dollars other than if I would be kind enough to say that I borrowed the money, that she would mark the note paid and give the note back to me and that’s the way she wanted Ht * *
“Q. Did she mark it paid ?
“A. She was suppose to mark it paid, but she never did. No. That’s right. * * *
“A. No, because in her letter, she stated to me — in fact, I saved the part of the letter that concerned me, and the letter specifically states that she was suppose to mark this note paid and return the note to me. Exactly. That’s why I wasn’t worried. I said, at least I got — so, at a later date when I demanded my note back and asked her to return my note, she refused to return the note to me. I sent her telegrams; I phoned her; she never would return the note marked paid. I said, well, then, I heard from you, as her attorney, demanding payment of this note.
“Q. You intended to prosecute her?
“A. That’s right. That’s correct, because I thought maybe that was— that she was doing something criminally, not returning my note marked paid to me. I kept the part of the letter; in fact, the letter was so vulgar that I didn’t keep the other part.
“Q That’s why you threw it away ?
“A. That’s right. In her letter telling me all about her husband being a queer and this and that, and she is in love with some lawyer in Biloxi. I kept the part of the letter that I thought concerned me. She never would return my note marked paid and I never got one red cent of this forty thousand dollars.”
It is a general rule that where the best evidence is not available and the use of secondary evidence is therefore permissible, it should be shown that such is the best that can be produced. Interstate Electric Co. v. Interstate Electric Co., 33 So.2d 779 (La.App.2d Cir. 1948). Defendant testified that he destroyed that portion of the letter that did not concern him and made a copy of the pertinent portion. At the time of trial, the remaining part that was available was an unsigned, undated portion of a letter allegedly written by plaintiff. Thus, this secondary evidence in the form of a copy of a copy was presumably the only form of the instrument in fact. In Mercier and others v. Harnan, 39 La.Ann. 94, 1 So. 410 (1887) the Supreme Court held that a copy of a copy is not admissible in evidence, unless the original is alleged and proven to be lost, and that a copy thereof cannot be obtained. See: Civil Code, arts. *193 2268, 2269, 2279, 2280; Coleman v. Breaud, 6 Mart. (N.S.) 207, 208; Roebuck v. Curry, 2 La.Ann. 998; Duplessis v. Miller, 6 La.Ann. 683; Tate v. Penne, 7 Mart. (N. S.) S48, S50; Norwood v. Green, 5 Mart. (N.S.) 175; Johnston’s Heirs v. Cox’s Syndic., 13 La. 536. Defendant in the case at bar was in possession of the original letter in question. Mrs. Brenza is deceased therefore no information can be elicited from her concerning the letter. Defendant has stated that he destroyed the extraneous portions of the original letter because of its offensiveness and now has only the copy of a copy of the relevant portion. The record reveals that the trial court was apprised of the reasons for the destruction of the original and that a copy of the original could not be obtained. Predicated on this testimony that the original was lost, the trial court admitted the document in evidence.
The applicable jurisprudence in this area states that:
“ ‘A party to a trial is not precluded from introducing secondary evidence of the contents of a destroyed instrument although he himself destroyed the instrument deliberately and voluntarily, if at the time he did so, he acted under an erroneous impression as to the effect of his act or under other circumstances which render his act free from all intention of fraud. In such cases, however, it is essential to show by competent evidence facts which are sufficient to rebut all inference of a fraudulent intent or purpose arising from the act of destruction. * * * ” 20 Am.Jur., ‘Evidence’, Section 438, page 391. (Emphasis ours.)
“ ‘Secondary evidence is admissible, where the primary evidence of the fact sought to be proved has been destroyed by the party seeking to establish the fact, only where such destruction was by accident or mistake or free from circumstances of fraud.’ 32 C.J.S., Evidence, § 824, page 752.” (Emphasis ours.) Crosby v. Little River Sand & Gravel Development, 212 La. 1, 31 So.2d 226, 229 (1947).
The contention of plaintiff is that defendant destroyed other parts of the letter in an effort to defraud plaintiff. However, the record does not substantiate this contention.
The testimony of Mr. Occhipinti and Mr. Miceli as to what transpired on November 7, 1967, is uncontradictory. The conclusion to be drawn from their testimony is that the making of the note was a sham done as a favor for Mrs. Brenza. No consideration was in reality to be given for the note.
The copy of the letter admitted into evidence substantiates and corroborates defendant’s position that the transaction was a favor without consideration. The content of this portion of the letter reads:
“No one would believe the story that I gave Alexander $40,000 without a witness and without a receipt. My own lawyer wouldn’t believe this.
“So I thought that the explanation would be I invested $40,000 in your company or you borrowed $40,000 make a legal document and note and I mark the note paid in case anything happens to me. You hold the note. This is plausible nothing else will be.”
Although the portion copied may have been taken out of context, we fail to see how these statements would have proved contradictory or inconsistent with the other parts of the letter. The writer clearly exposes the intent to mark the $40,000 note paid. Thus, we cannot concur with plaintiff’s suggestion that the destruction of the destroyed parts of the letter by defendant was with the intent to defraud. The instrument seems to speak for itself. We feel defendant had personal reasons for destroying the original letter, but that the evidence as presented was sufficient to rebut the inference of a fraudulent purpose arising from the act of destruction. We *194 simply cannot see how the destroyed parts of the letter could have varied the content of the salvaged portion and thus we fail to accept the suggestion that defendant advantageously with intent to defraud destroyed the remainder of the letter. Thus, we find that the copy of the letter was valuable secondary evidence which was the best evidence available and was properly admitted.
Counsel for both sides had agreed between themselves that the letter at issue was not admissible therefore it would not be introduced. However, there was no stipulation to this effect made binding on the court. The trial judge having heard the testimony of the parties, exercised his broad discretion and permitted the introduction of this secondary evidence. In light of the confusing and contradictory facts of this case, increased by the fact that plaintiff was then deceased, we readily can understand the admission into evidence of this instrument to which defendant periodically referred in his testimony. Any effort by the trial court to shed light on the mysterious circumstances of this transaction is understandable.
We are accordingly of the opinion that the trial court did not commit manifest error in permitting the introduction of the letter into evidence, particularly in view of the bizarre nature of the circumstances surrounding the execution of the note.
Counsel for plaintiff suggested that the handwriting on the letter introduced was not that of plaintiff, Mrs. Brenza, but a forgery and requested opportunity to have the letter examined to prove his allegation. The trial judge granted leave in order to afford counsel for plaintiff time to have a handwriting expert examine the letter and determine whether or not it was in the handwriting of Mrs. Brenza or a forgery. A determination that the document was a forgery would have obviously had bearing on the result of the case. However, when the trial was again continued, counsel for plaintiff explained that he did not desire to avail himself of the opportunity to have the document examined in order to ascertain whether or not it was forged.
 The presumption of consideration for the note having been cast in doubt by evidence introduced by defendant, the burden then shifted to plaintiff to show consideration by a preponderance of evidence. We find plaintiff has failed to carry this burden.
Accordingly, for the foregoing reasons the judgment of the trial court dismissing plaintiff’s suit on the note is affirmed. Costs of this proceeding to be borne by plaintiff.
Affirmed.