TUCKER, Judge.
This is a suit by Edward Andrews, the holder and owner of a certain promissory note made and executed by Jessie Williams and Willie Mae Williams, defendants herein, dated March 11, 1968, in the principal amount of One Thousand Two Hundred Twenty-Five and 84/100 ($1,225.84) dollars, and stipulating to bear interest at the rate of five per cent (5%) per annum from date of judicial demand until paid, plus twenty-five per cent (25%) additional as attorney fees, if sued upon. The note was made payable to the order of the plaintiff, Edward Andrews, at the Louisiana National Bank of Baton Rouge in monthly installments of Fifty and No/100 ($50.00) dollars each, the first installment being due and payable on or before April 11, 1968, and a like installment being due and payable on or before the 11th day of each consecutive month thereafter. The note contained an acceleration clause, providing in effect that the failure to pay any installment promptly as it became due immediately matured the entire note and made the whole unpaid balance, interest and attorney’s fees due and exigible at the option of the holder.
Despite amicable demand no payments have been made on the note; therefore plaintiff has brought this suit against the defendants asking an in solido judgment in the amount of the principal sum, the interest due, and attorney’s fees, all as set forth above, and for all costs of suit.
The defendants answered the suit alleging that they never intended to bind themselves for the entire amount of the note; that they believed that they were signing a petition being taken around to all the parents of children in the neighborhood asking them to cooperate in paying for damage to the plaintiff’s bulldozer, allegedly caused by the neighborhood children; that they believed their son to have been implicated in the actions of the previous day resulting in damage to plaintiff’s bulldozer, although they subsequently learned that he had taken no part in the depredations.
Judgment was awarded to the plaintiff in the trial court against Jessie Williams on the basis of his liability for the delicts of his minor son living with him as a good and sufficient cause for the contract represented by the note. Suit was dismissed against Willie Mae Williams on the basis that her signing the note on threat of criminal prosecution against her son was insufficient cause for a contract under Civil Code Articles 1893 and 1895. The trial judge stated that under C.C. Article 2318 the mother of a minor child is not liable for his delicts unless the father is not living; hence a belief in delictual responsibility for a child’s acts cannot be sufficient *57 cause for a mother’s contract, which contract fails without a cause, under C.C. Art. 1893.
From this judgment against him Jessie Williams has appealed, specifying a number of grounds of error, all of which center around an allegation of insufficient cause and consideration for the contract and insufficient proof.
The obligation upon which the note in this suit was executed fails for a complete lack of cause as required by C.C. Arts. 1893 and 1896. The defendants in this suit, Jessie who had had no education, and his wife Willie Mae Williams who had finished the seventh grade only, admitted that they signed the note in question, but without reading it. Plaintiff denies any coercion and testifies that defendants signed the note agreeing to pay him Fifty ($50.00) Dollars a month, because they believed themselves obligated for the damage allegedly caused to his bulldozer on the preceding day by their son who was already on probation. The record shows that the son was within two months of being twenty-one years of age at the time of the alleged bulldozer damage. Plaintiff stated further that he did not know anything about the defendants’ son’s criminal record until they told him. Plaintiff testified that he promised to help the defendants with their obligation and did not intend to make them pay the entire amount of the note, if they would pay some of it. Defendants deny the entire conversation, and there are no other witnesses to it.
Defendants state that plaintiff told them that he was taking a petition around to the parents of the children in the neighborhood asking them to sign it indicating that they would cooperate in paying for the damage which he alleged that the neighborhood children had caused his bulldozer by driving it around and burning out its engine, after he had drained it of oil and water in expectation of a freeze. Incidentally, no purpose is served by draining the oil from the crankcase to avert freeze damage. Willie Mae Williams testified in this regard, “I took the colored man to be a truthful colored man, to tell you the truth.” She emphatically denied that she knew that she was obligating herself to pay One Thousand Two Hundred and Twenty-Five ($1,225.00) dollars. She testified further that she did not know whether her son had had anything to do with the bulldozer which she had seen sitting on the vacant lot near her for four or five months, but that there are “gobs” of children in the neighborhood— five or six hundred. She thought that, if each parent paid plaintiff Two ($2.00) Dollars, that ought to take care of any damage to his bulldozer. The people in the neighborhood were accustomed to helping each other in case of need. She did not see the repair estimate, contended as being unrelated to engine damage. (Exhibit P-1). The bulldozer was four or five years old and had been bought second-hand.
In regard to the bulldozer the testimony shows additional inconsistency. The defendants stated that the bulldozer had been sitting on the vacant lot for several months with the grass grown up around it, which the children had mashed down somewhat by playing in that area. Plaintiff, on the other hand, testified that he merely parked the bulldozer on the neighborhood lot which he rented, and that on the day of the alleged damage he had returned the bulldozer from a work site on College Drive to the vacant lot at 9:00 A. M., because he' did not anticipate using it again soon. He removed the starter and drained the bulldozer, as aforesaid. He claimed that the children had driven it all over the lot, destroying the grass, although he did not see them do it.
Faced with completely contradictory uncorroborated testimony, this court is forced to apply common sense and logic and conclude that it is most unlikely that a couple living on approximately Two Hundred Fifty ($250.00) Dollars per month derived from social security, social welfare and remuneration for domestic labor, who had to prosecute this appeal in forma pauperis, *58 could have knowingly and willingly obligated themselves to pay $1,225.00, at the rate of $50.00 per month, particularly without being convinced of the actual involvement of their almost-adult son and without seeing the repair bill for his alleged depredations, no matter what was their level of intelligence and education. This Court cannot find sufficient cause, as required by C. C. Articles 1893 and 1896, for defendants allegedly having contracted to pay plaintiff the sum of $1,225.00.
Furthermore R.S. 7:28 provides that under the Negotiable Instruments Law of Louisiana which governs a note such as the one being sued upon:
“Absence or failure of consideration is a matter of defence as against any person not a holder in due course; and partial failure of consideration is a de-fence pro tanto, whether the failure is an ascertained and liquidated amount or otherwise.”
In the instant case defendants’ son testified in court that he had had nothing to do with plaintiff’s tractor; that he had not taken any parts off of it; that he had not driven it; and in fact could not even drive a tractor. Under the law and the jurisprudence of this state, once the defendant offers evidence during a trial which casts doubt upon the consideration or cause for a negotiable instrument, as between the parties to it, the presumption that the note was given for value is rebutted, and the burden shifts to the plaintiff to prove consideration or cause by a preponderance of the evidence. Alexander v. Occhipinti, 251 So.2d 188 (La.App. 4th Cir. 1971), and numerous cases cited therein. After Harry Joe Williams, defendants’ son, had testified, plaintiff made no effort to rebut his testimony whatsoever. In fact he never offered any evidence to prove that Harry Joe Williams had caused any damage to his bulldozer other than to say that a lady had told him that. Plaintiff introduced no evidence, in fact to show that his bulldozer had been damaged, when it might have been damaged, or by whom, other than a repair estimate, which could easily have been for deterioration over a long period of time or for damage which might have been caused previously, and by anyone including the owner. Plaintiff’s own, uncorroborated statements are the only evidence in the record regarding the condition of his bulldozer, the time, place, and cause of its deterioration and/or damage. This court finds that plaintiff has completely failed to present a preponderance of evidence to prove any cause or consideration for the note being sued upon.
We hold that the trial court was manifestly erroneous in its conclusion that it could be determined reasonably from the facts of this case that there was a valid cause and consideration moving to defendant Jessie Williams when he signed the subject note.
For the above and foregoing reasons the judgment of the trial Court in favor of the plaintiff and against defendant, Jessie Williams, is reversed and his suit is dismissed; in all other respects the judgment is affirmed. The plaintiff-appellee is cast with all of the costs of these proceedings.
Judgment affirmed in part; reversed in part and rendered.